# Graeff *v.* Philadelphia & Reading R. R., Appellant.

[Marked to be reported.]

*Negligence—Railroads—Passengers—Rudeness—Breach of peace—Doors.*

A common carrier is not bound to protect its passengers from rudeness or bad manners on the part of strangers or other passengers, unless such conduct amounts to a breach of the peace.

A railroad company is not liable for an injury to a passenger caused by another passenger rudely and suddenly pushing a swinging door in the first passenger's face.

*Appliance used for carriage of passengers—Presumption of negligence.*

In such case the company cannot be convicted of negligence because a station door was not of glass above the middle rail, so that persons approaching the door could see each other; nor was the presence of a small screw eye on the inner surface of the door, where it could come in contact with a person's head, evidence of negligence; they were no part of the machinery used for the carriage of passengers, so as to raise a presumption of negligence from the accident.

Argued March 30, 1894.    Appeal, No. 287, Jan. T., 1894, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1889, No. 187, on verdict for plaintiff, Norah S. Graeff.    Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Trespass for personal injury.    Before PENNYPACKER, J.

At the trial it appeared that on Feb. 7, 1889, plaintiff, who had been a passenger on one of defendant's trains, arrived at the Green Street station, and while coming out from the station was injured by a door swung violently in her face.    It appeared that in front of the door leading out into Green street a storm vestibule or box had been erected, with swinging doors on each side of it.    A person leaving the station would step down from the sill of the door into this box, and then leave the box, either on the right or left hand, through a door which swung each way.    Each door was forty-two inches wide, of which eight inches in the center, from the lock-rail up, was of glass; the rest was of wood.    At a point four and one half feet above the pavement a screw eye was inserted to hold the door back when the weather was sufficiently warm to warrant it.    On the day of the accident, plaintiff had just stepped down into the box, when a passenger coming from the street violently

pushed the door open.   It struck plaintiff, and the screw eye hit her in the head just at the line of the hair on her forehead. The passenger doing this passed on, and presumably took his train, for nothing more was heard of him.

Defendant's points were as follows :

" 2. The evidence in this case discloses that a 'passenger, by an act of rudeness, in his haste to enter the train, pushed the door against the plaintiff and inflicted the injury.   The railroad company is not bound to protect its passengers from such rudeness, and the plaintiff cannot recover, and your verdict must be for the railroad company."   Refused. [5]

" 3. The evidence here discloses that if the door had been used in the ordinary and accustomed way, by passengers not acting rudely or unmannerly, but merely for the purposes of using the door for proper ingress, the accident would not have happened.   The cause of the accident, therefore, was the improper act of a passenger, and the plaintiff cannot recover." Refused. [6]

" 5. No negligence has been shown on the part of the railroad company, and your verdict must be for the defendant." Refused. [7]

6. Request for binding instruction.   Refused. [8]

Verdict and judgment for plaintiff for $2,000.

*Errors assigned* were (5–8) instructions, quoting them.

*Gavin W. Hart*, for appellant.—A railroad company is not liable for an injury caused by the mere rudeness of another passenger : Ellinger v. R. R., 153 Pa. 215.

Two cases have been decided upon facts nearly allied to the case in hand, in each of which this court has held that no liability existed : Kies v. Erie, 135 Pa. 144 ; Eisenbrey v. Penna. Co., 141 Pa. 566.

Ordinarily the question of proximate and remote cause is for the jury ; but where facts are not in dispute, the determination is for the court.   Where the facts are undisputed and the intervening agency is manifest, it is not error for the court to withhold the evidence from the jury : Hoag v. R. R., 85 Pa. 293 ; West Mahanoy v. Watson, 112 Pa. 575 ; West Mahanoy v. Watson, 116 Pa. 344 ; Bunting v. Hogsett, 139 Pa. 363 · Herr v. Lebanon, 149 Pa. 226.

*Wm. C. Gross, Thomas F. Gross* with him, for appellee.—
The accident happened by reason of the improper construction
of the storm-door. It was not a properly constructed door for
the place or manner in which it was used : Hayman v. R. R.,
118 Pa. 508.

This door was improperly constructed for the purposes for
which it was used and the place at which it was located, in, at
least, three respects : (1) It should not have been allowed to
swing both ways ; (2) it should have been practically all glass,
properly protected, above the lock-rail ; (3) the screw eye should
not have been at a place where a person of average height could
have been hit by it.

There was no evidence of rudeness which occasioned this
injury, nor that the door was not used in the ordinary and ac-
customed way, so that the facts as assumed in the fifth and
sixth specifications of error do not exist in this case, and to
have affirmed these points would have been fatal error.

OPINION BY MR. JUSTICE GREEN, April 23, 1894 :

The act which caused the plaintiff's injury was not the act
of the defendant nor of any of its agents or employees. It was
exclusively the act of a total stranger, over whom, or whose
actions, the defendant had not the slightest control. Moreover
his action was not the usual customary conduct of an intending
passenger about to pass through the door in question, but it
was rude, impatient and unusual. The plaintiff, herself, thus
describes the manner of her injury. Having said she was just
about going out of the door and had her hand up at the door,
and her left foot on the pavement, she was asked : " Q. Where
was the right foot ? A. On the step, and going out there was
a gentleman walked in or came running to make the train, and
as he ran in he knocked the door against my head. Q. Where
did he hit your head ? A. He struck me right there on the
forehead."

The plaintiff's witness, Emma Bettker, being the only other
witness who described the manner of the injury, testified as
follows upon the same subject : " As we were going out of the
door Nora put her hands up to the door to go out, while two
gentlemen came a rushing in and threw the door on Nora, and
we were still going to pass out when there was a gentleman

coming from the depot says, ' Why, Miss, he has broke the skin ; you had better go in.' "   The foregoing is the whole of the testimony descriptive of the injury, except the plaintiff's cross-examination, which is substantially similar to the testimony in chief.

It is manifest therefore that the plaintiff's injury was exclusively the result of the unusual, rude and hasty act of a stranger.   Dealing with just such a question as this, in the case of Ellinger v. Phila., Wilmington & Baltimore R. R. Co., 153 Pa. 215, we held that a common carrier is not bound to protect its passengers from rudeness or bad manners on the part of strangers or other passengers, unless such conduct amounts to a breach of the peace.   A woman is not entitled to recover damages from a railroad company for personal injuries, where it appears from her own testimony that when she was about to descend from the lower step of a car to the ground she was jostled off by another passenger rudely pushing by her to enter the car.   Our brother WILLIAMS, delivering the opinion, said : " She had reached the lowest step and was in the act of stepping from it to the platform, when an impatient man, desiring to take the train at that station, stepped up on the step she was leaving and in so doing crowded or jostled her, and she fell.   The immediate cause of her fall was the act of the impatient man in his efforts to get upon the car. . . . But protection against bad manners is not, so far as I am aware, one of the duties owing by a carrier to its passengers.   Rudeness is a breach of no positive law.   The ordinary cars are, and must be, open to the masses, among whom there will be different degrees of intelligence and politeness; differences in physical vigor and temperament.   There is therefore necessarily a certain amount of rudeness, of haste, of selfish disregard of the nerves and of the comfort of others to be met with wherever men and women congregate, whether upon railroad trains, in places of amusement, or upon the streets of a city.   Unless such conduct amounts to a breach of the peace, the officers of the law can take no cognizance of it, and carriers are not bound to prevent it or liable in damages for its appearance about their stations or trains.   The plaintiff was the victim of an act of rudeness."

All of this language is precisely applicable to the present

case.   An impatient traveler, in a hurry to make a train, rushes ahead heedlessly, pushes the door open violently and causes the door to strike the plaintiff with force, and injures the plaintiff.   It was an act of rudeness of which the plaintiff was the victim.   That the stranger was responsible for his act there can be no doubt, but that the defendant shall be made to suffer in damages for such an act is intolerable and unjust to the last degree.   It is subject to no duty to guard against such acts and therefore is not negligent in that regard.

But, says the plaintiff, the defendant is negligent in the construction of the door, and therefore should be liable.   A couple of carpenters are examined who, after the event, say the door was defective because it was not all glass above the middle rail, so that persons could see each other coming to the door.   It is not at all certain that the same accident would have been avoided if this door had been built in that way, because the same spirit of impatience and rudeness would have prompted the same act of haste in opening the door to get through quickly, although another person was visible on the other side. But the best illustration of the fallacy of the attempt to establish negligence in this way is afforded by one of our own cases, Hayman v. Pa. R. R. Co., 118 Pa. 508.   There the door for the transit of the passengers from the wharf to the boat was constructed precisely as the carpenters said this one should have been, viz. : all glass above the middle rail.   But it happened that a passenger going through it just behind another passenger, put up his hand to push it open, and he struck the glass with force enough to break it, and his hand having been cut severely by the broken glass, he brought an action against the company, and sought to recover upon the presumption of negligence arising from the mere fact of the accident.   But we refused to sanction that proposition and held that the door was no part of the machinery used for the carriage of passengers, and that the plaintiff, in order to recover, must prove negligence affirmatively.   In that case the accident resulted from the presence of too much glass in the door and in this case it was contended there was too little.   But both contentions were untenable.   The doors were both such as are in common use, and the mere construction of neither of them justified an inference of negligence.   The present case is much

stronger than the Hayman case, because in that the injury was the result of the mere ordinary use of the door, while here it was the result of the violent act of a stranger.

Again it is contended that the presence of a small screw eye on the inner surface of the door was the immediate means by which the injury was inflicted, and therefore it was negligence to have it in a position where it could strike the plaintiff's head. There was no proof that such an appliance was not a usual and suitable device for holding the door open when the weather did not require it to be closed, but it was contended it should have been at the top or the bottom of the door so that it could not have hurt the plaintiff. It was a very small screw eye and only projected nine sixteenths of an inch beyond the surface. It was located four feet and ten inches from the bottom of the door and it happened that the plaintiff was of a sufficiently short stature to bring her head on the level with this little appliance. It is a sufficient reply to the argument derived from this source to say that if the eye had been at the bottom of the door it might have struck her ankle and injured her, as was the fact in the case of Kies v. Erie City, 135 Pa. 144. There the plaintiff, who was a woman also, was passing along the street in front of an engine house when the door, which projected when open six feet over the pavement, was suddenly thrown open and struck the plaintiff on the ankle and injured her seriously. She brought an action against the city for the injury, but the court below granted a nonsuit which this court sustained. It was claimed that the building was negligently constructed as to the doors and therefore the city was liable, but we held otherwise. Mr. Chief Justice PAXSON said in the opinion: "It is true the doors of the engine house opened outwards and were operated by springs, which, when certain bolts were pulled, opened, or assisted in opening the doors. The case was argued upon the theory that when the bolts were pulled the springs opened the doors suddenly and with great violence. In such case as they swept across a considerable portion of the pavement in opening, it can readily be seen that they might be a dangerous trap to injure persons passing along the said pavement. The only testimony on the part of the plaintiff upon this subject was substantially as follows: 'When the bolts are pulled, you have to start the doors a little bit, and then the

spring takes holt, and helps swing the door open. Sometimes they are opened quick and sometimes not so quick. If the wind is blowing, it is difficult and you have to follow the door and push it along; and when there is no wind they swing freely.' As the plaintiff was nonsuited she is entitled to all the deductions which can fairly be drawn from this evidence. Tested by this rule, however, it is not sufficient to justify a jury in finding that the doors of the engine house were defectively constructed, and dangerous to citizens using the pavement. It is evident that the only object and effect of the springs was to aid the firemen in swinging open the heavy doors. It is not only possible but probable, that, on the occasion referred to, if the door was opened rapidly and violently, as contended by the plaintiff, it was the result of a push by the person who opened it. For his carelessness or negligence, the city, under all the authorities, is not liable, and we have already said there was not sufficient evidence of the faulty construction of the building to submit to the jury."

Just so in the present case. The defendant is not responsible for the act of the stranger in pushing open the door in a rude and violent manner. If it had been opened in the ordinary and usual manner the plaintiff would not have been hurt. But the defendant is not bound to take precautions against the unusual and negligent use of its appliances by strangers, or others. If they are reasonably safe when used with ordinary care, and in the manner that prevails with the mass of mankind, the duty of the party who supplies them is performed.

A very apt illustration of this doctrine is found in the case of Eisenbrey v. Penna. Co., 141 Pa. 566. There a fence was erected inclosing the front steps of a residence, and having a door therein extending when wide open ten inches beyond the limit within which obstructions were permitted by a city ordinance. The plaintiff, an old man sixty-nine years of age, was passing along the foot walk in front of the house, when suddenly the door or gate in the fence was thrown open, and struck him, causing him to fall and suffer a fracture of his thigh. A verdict was recovered in the court below, but we reversed the judgment without a venire. We said: "The accident did not result from the erection of the fence. That was harmless enough, and, if in violation of the city ordinance, which does

not clearly appear, was not necessarily dangerous or likely to injure any one. The proximate cause of the injury to the plaintiff was the throwing open of the door suddenly. It was not contended that this was done by the company or by any agent, employee, or servant thereof. There is no room, therefore, to apply the doctrine of respondeat superior."

All of this is exactly pertinent to the present contention. For the rude and hasty act of the stranger the defendant is not responsible.

The screw eye was a perfectly proper appliance to be upon the door to fasten it back. In itself it was entirely innocent and was not by any means so prominent as the knob of a door, or an outside lock, or a key projecting therefrom. In all the ordinary uses of the door there was not the least liability to inflict injury resulting from its presence. It is not possible to regard it as any more, nor even as much, a source of danger, as a projecting knob, or lock, or key, or even a piece of carving or an old fashioned knocker. We are perfectly clear that the mere presence of such an appliance on the surface of a door is not the least evidence of negligence in the construction of the door, and the same is true of the glass plate.

Upon the whole testimony we are of opinion that the case should have been withdrawn from the jury with a binding instruction to find a verdict for the defendant. We sustain the fifth, sixth, seventh and eighth assignments of error. The others are immaterial.

Judgment reversed.