DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

*(Continued from Volume 33.)*

## PAUL v. SALT LAKE CITY R. CO.

No. 1892. Decided April 8, 1908 (95 Pac. 363).

1. CARRIERS—ACTION FOR INJURY TO PASSENGER—RES IPSA LOQUITUR. A recovery against a carrier under the rule *res ipsa loquitur* cannot be had by merely showing that an accident occurred and that an injury was sustained by a passenger, but it must further appear that the injury was caused by something which, at the time it occurred, was in the care, custody, or under the control of the carrier, or in some way connected with or related to his business in the transportation of passengers, and while there is no presumption that the particular things that caused the injury actually existed, if there is some competent evidence showing their existence and the occurrence of the accident caused by any one of them and the resulting injury, the law will presume that the accident was the result of the carrier's negligence, and the burden of proof is on it to show that it was not at fault.[1]

2. SAME—APPLICATION OF RULE RES IPSA LOQUITUR. The rule *res ipsa loquitur* applies to the operation of street cars and to all passengers alike whether injured while riding in a car or in getting on or off.

---

[1] Dearden v. S. P., L. A. & S. L. R. Co. (33 Utah 147), 93 Pac. 271.

(1)

34 Utah—1

3. NEW TRIAL — GROUNDS — MISCONDUCT AFFECTING JURY — MIS-
CONDUCT OF PRESIDENT OF DEFENDANT CORPORATION. An affidavit
supporting a motion for a new trial averred on information and
belief that the president of defendant corporation was also the
president, prophet, seer, and revelator of the Church of Jesus Christ
of Latter-Day Saints, and at a secret priesthood meeting
before the trial instructed his followers as to their duties if called
upon to serve as jurors in cases against corporations, and especially
street railway corporations, and stated that there were grafters
seeking by trickery to obtain verdicts against corporations by
means of damage suits, and that he regretted that Latter-Day
Saints sitting as jurors had returned verdicts against corporations.
The affidavit further averred that five of the jurors trying the
case were members of the Church of Latter-Day Saints. It was
not claimed that any of the jurors were present at the meeting or
ever heard of what was alleged to have been said by the president
of the church. *Held*, that the affidavit was insufficient, especially
where the jurors assailed filed counter affidavits in which they
denied knowledge of the alleged instructions by the president of the
church, and alleged that they had never heard of them until in-
formed of them by the affidavit, since in order to constitute mis-
conduct which would affect a regularly returned verdict, it must in
some way be made clearly apparent that the acts complained of
reached the jurors or some of them.

APPEAL from District Court, Third District; T. D. Lewis,
Judge.

Personal injury action by Louisa B. Paul against the Salt
Lake City Railroad Company. Judgment for defendant and
plaintiff appeals.

AFFIRMED.

*S. P. Armstrong* for appellant.

*P. L. Williams* for respondent.

APPELLANT'S POINTS.

Failure to give proper instructions requested is ground for
new trial. (Hayne, New Trial, secs. 120-124; *People v.
Hamilton*, 4 Utah 263; *People v. Chadwick*, 7 Utah 134;
*Downey v. Gemini M. Co.*, 24 Utah 440; *Allen v. McKay*,

120 Cal. 339; *Coddell v. Railroad,* 132 N. Car. 853.

"A *prima facie* case of negligence is made out by the testimony of the plaintiff, that being a passenger on defendant's street car, she indicated her desire to leave it, which stopped to enable her to do so, and that while she was in the act of leaving, and before she could place herself safely on the ground, it started and threw her." (*Paul v. Railroad,* 30 Utah 49; *Gleason v. Railroad,* 140 U. S. 443-4; *Stokes v. Stanstall,* 13 Pet. 181; *Stearns v. Ontario,* 184 Pa. St. 519; *Dampman v. Railroad,* 166 Pa. St. 520; *Laing v. Colder,* 8 Pa. St. 479; *Railroad v. Swan,* 81 Md. 400; *Railroad v. Yarwood,* 65 Am. D. 686-7, and note 690; *Railroad v. Snyder,* 117 Ind. 437; *Sullivan v. Railroad,* 72 Am. D. 698; Redf. Carriers, sec. 341.)

The carrier bound itself to carry the passenger safely and without any negligence so far as human care and foresight would go. (Chitty on Carriers, p. 256; Bonny, Ry. Carriers, p. 14; *Stearns v. Spinning Co.,* 184 Pa. St. 523; *Doolittle v. Railroad,* 62 S. Car. 138; *La Blank v. Sweet,* 31 So. 772.)

"Whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury. It belongs to the jury, not only to weigh the evidence and find upon the questions of fact, but to draw conclusions as well, alike from disputed and undisputed facts. (*Johnson v. Railroad,* 70 Pa. St. 363; *Railroad v. Hoeffner,* 175 Ill. 634; *Railroad v. Atkins,* 46 Ark. 437; *Railroad v. Wiswell,* 168 Ill. 615.)

This rule is so well established in this jurisdiction that it should not be necessary to cite authorities. (*Paul v. Railway,* 30 Utah 46; *Pence v. Mining Co.,* 27 Utah 386; *Linden v. Anchor M. Co.,* 20 Utah 147; *Bowers v. Railroad,* 4 Utah 224; *Olson v. Railroad,* 9 Utah 138; *Peck v. Railroad,* 25 Utah 21; *Holland v. Railroad,* 26 Utah 212; *Hone v. Mammoth M. Co.,* 27 Utah 176; Cooley, Torts, p. 804; *Railroad v. Byrum,* 153 Ill. 137; *Doolittle v. Railroad,* 62 S. Car. 137; *Cooper v. Railroad,* 61 S. Car. 345.)

RESPONDENT'S POINTS.

While we agree with counsel's first premise that "Failure to give proper instructions requested, is ground for new trial," it should also be remembered that if the court, in its instructions given, fully covers the grounds indicated by the requests, so as to fairly submit them to the jury it is sufficient; and it is not necessary to use the precise language adopted by counsel in his requests. (*Konold v. Railroad*, 21 Utah 379; *Scoville v. City*, 11 Utah 66; *Cunningham v. Railroad*, 4 Utah 206; *Thiede v. Utah*, 159 U. S. 510.)

"The burden of proving negligence rests on the party alleging it, and when a person charges negligence on the part of another as a cause of action, she must prove the negligence by a preponderance of the evidence." (*Brown v. S. P. Co.*, 7 Utah 288; *Fritz v. Elec. Light Co.*, 18 Utah 494; *Beebe v. St. Louis Transit Co.*, 103 S. W. 1019.)

"The instructions given to the jury by the trial court should be considered together, and even though detached facts of the instructions appear to be erroneous, yet if the charge considered altogether correctly presents the law, it will not be erroneous." *Hamer v. Bank*, 9 Utah 215; *Major v. Railroad*, 21 Utah 141; *People v. Wiggins*, 1 Utah 324; *People v. Lyman*, 2 Utah 30; *Rufatti v. Mining Co.*, 10 Utah 286; *State v. McCoy*, 15 Utah 151; *Thiede v. Utah*, 159 U. S. 510.)

"It is not proper to point out a single instruction and claim it to be objectionable of itself, but all the instructions must be considered together." (*Nickels v. Wells*, 2 Utah 167; *People v. Olsen*, 4 Utah 413; *State v. Williams*, 22 Utah 248.)

FRICK, J.

This is the second appeal of this case. The opinion on the first appeal is reported in 30 Utah 41, 83 Pac. 563, where judgment in favor of respondent was reversed upon the ground that the court committed error in its instructions to the jury. The facts developed on the second trial are practically the same as on the first, and they now appear to be as stated by Mr. Justice Straup on the former appeal.

The principal matters presented for review on this appeal, so far as they relate to the trial, involve the questions of contributory negligence on the part of appellant in alighting from a street car on which she was a passenger which was being operated by respondent, and the presumptions of negligence arising against the respondent by reason of the occurrence of the accident and injury to appellant. The court's instructions were very full and cover every phase of the case. Among other instructions, the court gave the following: "The mere fact that an accident has happened is not sufficient proof to charge the defendant with negligence nor the plaintiff with contributory negligence. The burden of proving negligence rests on the party alleging it, and when a person charges negligence on the part of another as a cause of action she must prove the negligence by a preponderance of the evidence. While the mere fact that an accident has happened is not sufficient proof to charge the defendant with negligence, yet, in this case the court instructs you that if you find from the evidence that while plaintiff was a passenger on defendant's street car, and while she was attempting to alight therefrom, she was injured by the car starting and jerking her to the ground, the fact, if you find it to be a fact, that she was injured by such starting and jerking of the car constitutes *prima facie* evidence of negligence on the part of defendant, and casts on the defendant the burden of showing that such starting took place without its fault, or that the injury occurred through the contributory negligence of the plaintiff. But the court instructs you that the burden of showing that she was injured by reason of such starting of the car is on the plaintiff, and there is no presumption from the mere fact that she was injured that the car was not in motion when she attempted to alight, nor is there any presumption that the car was not in motion when she attempted to alight from the mere fact of the injury. Whether or not the car was in motion is a fact that you must determine from the evidence." Appellant excepted to certain portions of

this instruction and now urges the giving of these parts as error.

On the former appeal we announced the following doctrine: That respondent had made out a *prima facie* case upon proving that she was a passenger on one of appellant's cars. That she had indicated her desire to leave it, and that the car was stopped to enable her to do so. That while in the act of alighting and before she had done so the car started and caused her to fall. We further held that the instructions of the court were not in harmony with this doctrine, but in conflict therewith, and hence held the instructions erroneous. Counsel for appellant now asserts that the foregoing instruction in its effect is practically the same as the one condemned by this court and hence likewise erroneous. Counsel, as we understand him, contends the law as between carrier and passenger to be that, if an accident of any kind occurs, or if a passenger is found injured or dead by the side of the track, or in a railway car, all that the plaintiff is required to prove is that the injured or deceased person was a passenger, and that while sustaining that relation was injured or killed. From such an injury or death it is contended the presumption arises that the passenger was injured or killed through the negligence of the carrier and the burden is cast upon him to explain the cause of the injury or death and thus purge himself of negligence. This, counsel says, is the necessary result of the application of the maxim *"res ipsa loquitur."* Is this contention sound? We think not. It is quite true that, as between carrier and passenger, the maxim applies in most instances. But it does not go to the extent contended for by counsel. We have very recently had occasion to consider and pass upon the application of the maxim as applied to carrier and passenger in the case of *Dearden v. S. P., L. A. & S. L. R. Co.,* 33 Utah 147, 93 Pac. 271. Mr. Justice Straup, in that case, at page 273, states the rule in the following language:

"All that the plaintiff here was required to aver and prove to entitle him to recover was the relation of passenger and carrier; that the accident through which he received his injuries was connected with the means or instrumentality used by the defendant in the transporta-

tion, and an injury resulting therefrom. When such facts were shown, a *prima facie* presumption arose that the accident was occasioned by the defendant's negligence, and the burden was cast on it to show that it was not at fault, and that the accident was not caused by its negligence."

This, we think, is a correct statement of the rule, as it is held to be by the great weight of authority.

In *Price v. St. L. I. M. & S. Ry. Co.*, 75 Ark., at page 491, 88 S. W., at page 578 (second column) 112 Am. St. Rep. 79, the Supreme Court of Arkansas adopts and quotes the following language which is termed to be the true rule:

"The true rule would seem to be that when the injury and circumstances attending it are so unusual and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equipment or operation of the road, over which the company has entire control, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden is then cast upon the company to show that its negligence did not cause the injury."

A large number of cases are cited which, it is claimed, support the text as quoted above. Under the rule, therefore, to show merely that an accident occurred, and that an injury was sustained by a passenger is not enough. It must further be made to appear that the injury was caused by something which, at the time it occurred, was in the care, custody, or under the control of the carrier, or in some way connected with or related to his business in the transportation of passengers. If one train collides with another, or if the train breaks through a bridge or culvert, or if it collides with some foreign object on the track, or is derailed, in all such cases, as between carrier and passenger, the rule is of easy application, and is generally enforced to its full extent. But if it is alleged that an accident has happened to a passenger through an alleged derailment of a car, or by a collision with some train or other object on the track, or from any other cause, there is no presumption that the collision actually occurred, or that the particular thing that caused the accident actually existed. These must be proved. But if some competent evidence is ad-

duced in support of the existence of the things enumerated, or any one of them, and of the occurrence and the accident caused by any one of them, and the resulting injury, then the law presumes that by the exercise of that high degree of care which it imposes upon common carriers the accident could have been averted, hence casts the burden on the carrier to show why it was not avoided.

Applying the rule to this case, there was no presumption that the car moved when the appellant alighted therefrom; but if it did move while she was in the act of alighting, the law presumes it was caused to move by the negligence of respondent's employees in charge of the car. It is sometimes held that in cases where injuries arise by reason of the alleged movement of a car while a passenger is in the act of stepping onto or in alighting therefrom, the question of whose negligence caused the accident may not always be free from doubt; that in such a case the passenger is also engaged in an act which requires the exercise of ordinary care for his own safety; that the act of the carrier in moving the car and the act of the passenger in getting on or off may thus combine to produce the result, and that the injury, if it arises from a fall under such circumstances, may thus as plausibly be attributed to the act of the passenger as to that of the carrier. It is for this reason that some very respectable courts have denied the application of the maxim "res ipsa loquitur" in cases of injuries which occur in attempting to get on or off street cars. The exception to the rule is well stated in the case of *Dresslar v. Citizens' St. Ry. Co.,* 19 Ind. App. 383, 47 N. E. 651. It seems to us, however, that this exception is not logical; at least in those jurisdictions where the plaintiff is not required to allege and prove affirmatively that he was in the exercise of ordinary care at the time of the injury. In Indiana and some other states where such affirmative allegations and proof are required, it may well be that where it appears from the complaint that the person was injured while in the act of alighting from a car, the proof required from the plaintiff that he was in the exercise of ordinary care at the time raises an inference rather than a presumption that the

accident and consequent injury was caused by the negligence of the carrier. We think, however, that the weight of authority is in accordance with the rule as announced in this case on the former appeal, namely, that it applies to the operation of street cars and to all passengers alike whether injured while riding in a car or in getting on or off. A plaintiff may, by his own testimony, or by that of his witnesses, entirely overcome the presumption, or leave the proximate cause of his injury, by reason of his own conduct, in such a state of doubt that the jury may be warranted in finding against him on the case as made by himself. We have carefully examined all the cases cited by counsel in support of his contention, and none of them goes to the extent that counsel claims. While in some of them general expressions are found that would seem to support counsel, still it is very clear that upon the facts stated the decisions all rest upon the principle that we have attempted to outline above and are in harmony with it. We think the court gave to appellant every benefit of the maxim *"res ipsa loquitur,"* and therefore committed no error in giving the instruction.

Complaint is also made of the giving of instructions Nos. 19 and 20. These instructions were, however, based upon some issue in the case, and correctly stated the law applicable thereto.

The only other assignment that requires consideration relates to the alleged misconduct of the president of respondent. The verdict was returned on April 26, 1906, and just two months thereafter appellant's counsel asked and obtained leave of the court to amend his notice of motion for a new trial and to support such amendment by affidavit. The affidavit is made by counsel, and, in substance, states: That, subsequent to the trial, affiant learned of certain interferences by the president of respondent which tended to pervert the course of justice and prevented plaintiff from having a fair trial. That Joseph F. Smith was at all times stated in the affidavit, the president of respondent and also the president, prophet, seer, and revelator of the Church of Jesus Christ of Latter-Day Saints, a religious organization with a large membership

in Salt Lake City and county. Affiant, on information and belief, states that one of the cardinal doctrines of said church is obedience to the teachings, utterances, and instructions of its prophet, seer, and revelator; that affiant is informed and believes that the said Joseph F. Smith, the president of said church and of respondent, at a secret priesthood meeting held at the Tabernacle in Salt Lake City on the evening of April 7, 1906, took occasion to instruct his religious followers as to their duties if called upon to serve as jurors in the trial of cases against corporations, and particularly street railway corporations, and that he stated, in substance, "that there were grafters in the country seeking by every possible trick to secure verdicts against corporations by means of damage suits; that people would step off street cars and pretend to fall or suffer injuries which did not exist, and lawyers would take such personal injury cases and by trickery secure verdicts against corporations." He further stated "that he regretted that Latter-Day Saints, sitting as jurors, have returned verdicts against corporations." It is further stated that if the utterances were not direct instructions to his followers to refuse to return verdicts against corporations, the purport thereof "was at least an inducement that they, as jurors, should look with great suspicion on suits against corporations." Affiant proceeds further to state the reasons why he cannot state the foregoing matters positively, and that five of the jurors trying this case are members of, and one of them an official in, such church.

It will be observed that there is not a single fact stated positively, nor is it claimed that any one of the jurors was present at the meeting or ever heard of what it is alleged was said by the president of the church. The claims made in this affidavit—and it was the only one filed—were manifestly insufficient to warrant the granting of a new trial. If verdicts should be set aside upon such statements made merely upon information, and which in no way connect the jurors or any of them with the alleged misconduct and things set forth, then but few if any verdicts would be permitted to stand. Courts in this regard follow strictly the policy of the law, which in

every possible way guards the purity of the jury box from un-due influence and contamination. Every party who attempts to or does tamper with the jury does so at his peril, and if established he may not be heard to say that what he did had no effect upon the verdict. But, in order to constitute misconduct so as to affect a regularly returned verdict, it must in some way be made clearly apparent that the act or acts complained of reached the jurors or some of them. If we assume in this case that the president of respondent, as president of the church, said all that counsel states he said, how could it have influenced or in any way affected any one who did not hear of it or was not aware of what, if anything, had been said? Is it to be presumed that simply because a juror is a member of a certain religious organization and believes in its doctrines and tenets, therefore a court can assume that he hears and knows of all matters that may be said by any official of the organization upon any and all subjects, and further assume that he would follow and be controlled by what such official may have said of which the juror is supposed to be informed constructively merely? The things attributed to Mr. Smith he had a right to say at any proper time and place if he believed them to be true, or if he had any reason to believe them so. He had no right however to mention such matter to a juror, nor to any person who might become such, either for the purpose of influencing his judgment, or for any purpose. If he had discussed such matters in the presence of jurors the law would not permit him to say that he did not thereby intend to influence their judgment, but would require him to bear the consequences his acts may have produced. It is not alleged nor shown by any evidence that Mr. Smith did any of these things. The claim is based upon the theory merely that the expressed wish or desire of the president of the church, upon all subjects, will be implicitly followed by all of the members of the church. If we assume this to be so in so far as it pertained to matters of religious doctrine, nevertheless it cannot also be assumed that it is true with regard to all other matters. Indeed it is a matter of universal knowledge that in matters such as are set forth in the

affidavit, the effect upon the ordinary layman would be to arouse his opposition to them rather than cause him to meekly comply therewith. But apart from all this, the jurors who were assailed filed counter affidavits in which they denied all knowledge of the alleged instructions by the president of the church, and alleged that they never had heard of them before their attention was directed to them by the affidavit of affiant. The trial court therefore had positive and competent proof before him that the alleged misconduct never reached the jurors or any of them, and hence would not have affected their verdict. All of the cases cited by counsel for appellant upon this point to support his contention in this case rather manifest and make clear that the misconduct which affects a verdict must in some way reach the jurors or some of them. It may consist in what is termed "packing" the jury, or it may be by circulating papers or other documents to influence them, or by extending special courtesies to some of them, or by direct communication with one or more of their number. It must however affect a juror who sits in the case or some one who may act as a juror in a particular case. The principles involved here are fully discussed in Thompson & Merriam on Jurors in chapter 21, where the rule we have stated above is fully sustained by the authorities. Any other rule would destroy the integrity of verdicts and make a mere farce of jury trials. If all matters that may be published in a newspaper, or that may be said by men in authority at any time or place about courts, litigants, and the matters in litigation are to be presumed as having influenced or controlled verdicts, then no verdict in any case of any public interest can be permitted to stand. In all such cases a showing, perhaps much stronger than the one in this case, could be made that somebody who in some way is related to the case or to a juror has said or published something which may have influenced him or some of the jurors sitting in the case. The court was clearly right in refusing a new trial upon this ground.

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.