ANTON CHRISTENSEN, Guardian ad litem of Martha Christensen, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, Appellant.

No. 1965.  Decided January 13, 1909 (99 Pac. 676).

1. NEGLIGENCE—RES IPSA LOQUITUR DOCTRINE—NATURE.  The *res ipsa loquitur* doctrine is merely a rule of evidence applicable to certain cases, and does not avoid the necessity of establishing negligence, when negligence is the gist of the action.[1]  (Page 142.).

2. CARRIERS—PASSENGERS—NEGLIGENCE—RES IPSA LOQUITUR DOCTRINE.  A passenger injured need only prove that the injury was caused by a collision, derailing or upsetting of coaches, breaking of machinery or appliances, etc., or through some act of the employees operating the machinery or appliances, or in the management of the instrumentalities or the means used in the business, over which the carrier has control and for the conduct and management of which he is responsible; but the inference of negligence drawn from the injury is merely one way of establishing negligence, and the rule is not applicable to all injuries of passengers.  (Page 142.)

3. CARRIERS—DUTY TO PASSENGERS.  A carrier must exercise the utmost care to protect his passengers against accidents, but is not an insurer of their safety.  (Page 148.)

4. MASTER AND SERVANT—INJURIES TO EMPLOYEE—NEGLIGENCE—RES IPSA LOQUITUR DOCTRINE.  Ordinarily the mere happening of an accident causing injury to an employee is no proof of negligence.  (Page 143.)

5. CARRIERS—PASSENGERS — INJURY — SWINGING CAR DOOR — NEGLIGENCE—EVIDENCE—SUFFICIENCY.  That while a train was standing still, and after a passenger had passed through a car door to alight, and while her hand was resting on the door jamb, the door closed, injuring her hand, does not show *prima facie* negligence of the carrier; it not appearing that the door had been placed back so as to come in contact with the catch and that the catch was defective.  (Page 144.)

---

[1] Dearden v. San Pedro R. Co., 33 Utah 147, 93 Pac. 271; Paul v. Railroad Co., 30 Utah 41, 83 Pac. 563; Paul v. Salt Lake R. Co., 34 Utah 1, 95 Pac. 363.

6. CARRIERS—NEGLIGENCE—REBUTTAL OF INFERENCE. Any inference that a car door catch was defective, arising from the fact that the door closed on a passenger's hand, was overcome by the conductor's testimony that the catch was in perfect order. (Page 146.)

7. NEGLIGENCE—INFERENCE—REBUTTAL. Inferential evidence of negligence is overcome by defendant's undisputed testimony showing that there was no negligence; and, where plaintiff's case rests entirely on such inferential evidence, the case must be taken from the jury. (Page 146.)

8. CARRIERS—PASSENGERS—INJURY—CAR DOORS. An injury to a passenger caused by the mere closing of an ordinary car door is a pure accident, for which the carrier is not liable, unless the injury is caused by some defect in the door or its appendages, or is attributable to the carrier's negligence, since a carrier is not an insurer against injury. (Page 147.)

9. CARRIERS—PASSENGERS—INJURY—CAR DOOR—CONTRIBUTORY NEGLIGENCE. It is not necessarily contributory negligence for a passenger to place his hand upon a car door frame at a place where a closing of the door will cause injury. (Page 148.)

APPEAL from District Court, Second District. *Hon. J. A. Howell*, Judge.

Personal injury action by Anton Christensen, Martha Christensen's guardian *ad litem*, against the Oregon Short Line Railroad Company. From a judgment for plaintiff, defendant appeals.

REVERSED, and new trial directed.

*P. L. Williams, Geo. H. Smith, John G. Willis* and *C. R. Hollingsworth* for appellant.

*Messrs. Maginnis & Corn* for respondent.

FRICK, J.

This is an action for personal injuries alleged to have been caused by the negligence of appellant. The action was prosecuted by respondent as guardian *ad litem* for the benefit of

his daughter, a minor. After alleging the corporate capacity of appellant, and that the appellant on the 15th day of September, 1907, did receive the minor aforesaid as a passenger for hire, the complaint states the following as constituting negligence on the part of appellant, namely: "That the said defendant company so managed, constructed, and operated its passenger car in which the said Martha Christensen was riding that the door thereof would stand open, and was permitted to swing upon its hinges, and that when the said Martha Christensen undertook to alight from said train at Bountiful, and while waiting for other passengers to alight, standing in the aisle, by a sudden jerk of said train she was thrown against the said door, and the same closed upon her fingers, catching the three first fingers of the left hand between the door and the jamb thereof, crushing the same." It is further alleged: "That said accident was caused by reason of the said door not being held firmly in its place, and also by reason of the careless and negligent causing of said train to jerk whilst the passengers were alighting therefrom." It will be observed that no negligence is directly charged except to "jerk" the train. No defect is alleged in any appliance or instrumentality, nor is it alleged that the door was left open negligently, or that the appellant was negligent because the door was "not being held firmly in its place." The negligence, therefore, if any, must be inferred from the facts stated, except that the appellant was negligent in causing the train to "jerk," as stated above.

The evidence upon the part of the respondent to establish the foregoing allegations is, in substance as follows: Martha Christensen, the injured minor, as appears from the printed abstract, testified: "My name is Martha Christensen, and I am thirteen years old. About the middle of last September, I went with my father from Ogden to Woods Cross. Father bought a ticket for me. I put my left hand on the door frame, and the door came shut on it. I was going out of the car. Father went out of the car ahead of me, and was out on the platform. The car had stopped before

I got up to go out. I came out and was outside on the platform of the car. I just came out and then put my hand on the door frame. I was on the platform outside. I don't know what I put my hand on the door frame for. I can't describe just what I was doing, and how I happened to put my hand on the door frame. I was going out and then I just put my hand on the door frame, and then the door slammed shut on it." On cross-examination she said: "I noticed the door was slamming when I was sitting in the car, and that was before I got up to go out. It was just about soon after I got on the train that I noticed the door. . . . That was soon after I got on the train at Ogden, and it continued to slam backwards and forwards."

The father, after stating that he and Martha on September 15, 1907, were passengers in appellant's train, in part testified: "The accident happened through the door shutting on her fingers as she was getting off. The first I knew of it (I was already down on the platform of the station at Woods Cross) was when she came down crying and holding her hand. When I got off the rain, it had stopped. . . . I noticed the door on the train. It was on the swing, and every little while when the train slacked up it would go shut with a crash. I have no knowledge as to what caused it to go shut at the time it crushed her hand. I didn't see that. I have frequently observed passenger cars and the doors to them, most of them which I have seen have a catch. When the train is stopped at a station and the passengers are getting off the car, the door is fastened back with a catch. . . . I do not know just what kind of a catch it is. It is a clasp that goes back. A clasp comes back to that hook to hold it, with a spring on it. . . . It is automatic, and you just push it back and it catches. It is for the purpose of holding it open." On cross-examination the witness said: "The door was open back when I got off. I couldn't tell particularly when was the last time I saw it swing to with the noise. It was before I got to Woods Cross, but I couldn't tell you just where it was."

The conductor testified: "I first learned of it [the accident] when she stepped off the station platform down on the ground. I made an examination of the door of the car. It was O. S. L. 151, I think. I made an examination of the fastenings provided for holding the door open. They were in perfect condition. The door held when it was pushed back. I simply looked to see what was the cause of the door slamming. I got up to see after the train started. . . . The fastening was all right on the door." He further said, on cross-examination, that he made the examination after the train had left the station; that he could not say whether the door was clamped back at the time the girl got off the train; that both doors of the car were open all the way from Ogden to Salt Lake City; that they were open because the weather was warm.

The foregoing substantially is all the evidence adduced at the trial. At the close of the evidence, the appellant requested the court to direct the jury to find for it. The court refused the request, and submitted the case to the jury upon the evidence. The jury rendered a verdict in favor of respondent, upon which the court entered judgment, and hence this appeal.

The appellant excepted to the refusal of the court to direct a verdict, and now urges that the court erred in submitting the case to the jury upon the evidence adduced at the trial. There certainly is no evidence whatever to sustain the allegation of negligence with regard to the moving or jerking of the train. This, therefore, is eliminated from the case. Is there any evidence of negligence in any other respect? It certainly cannot be contended that there is any direct evidence that any appliance or instrumentality in use by appellant was defective, or that the injury was caused by any such defect. Is there any indirect or circumstantial evidence from which such negligence may be inferred, or are the facts and circumstances, as disclosed by the evidence, such as bring the case within the maxim of *res ipsa loquitur?* In other words, are the circumstances surround-

ing the accident in question such that negligence upon the part of appellant may be assumed or inferred from the mere happening of the accident? Appellant contends that there is no evidence of negligence, either direct or circumstantial, and that the undisputed facts, as they appear from the evidence, do not bring the case within the maxim aforesaid. Upon the other hand, respondent insists that the facts and circumstances are such as bring the case within the maxim, and that all that was incumbent upon him to prove to entitle him to a verdict at the hands of the jury was proved at the trial. We have very recently had occasion to discuss and apply the maxim of *res ipsa loquitur* as between carrier and passenger in the cases of *Dearden v. San Pedro R. Co.*, 33 Utah 147, 93 Pac. 271, and *Paul v. Salt Lake City R. Co.*, 34 Utah 1, 95 Pac. 363. The maxim *"res ipsa loquitur"* is merely a rule of evidence applicable in a certain class of cases, and is generally applied in cases of injuries to passengers.

The maxim, when applicable to the facts and circumstances of a particular case, is not intended to, **1, 2** and does not, dispense with establishing negligence. In all cases when negligence is the gist of the action, the negligence must be proved, but in case of an injury to a passenger he is only required to prove that the injury was occasioned by a collision derailing or upsetting of coaches, breaking of machinery or appliances, or things of that character, or through some act or acts of the servants operating the machinery or appliances, or in the management of the instrumentalities or the means used in the business over which the carrier has control, and for the conduct and management of which he is responsible. *Paul v. Railroad Co.*, 30 Utah 49, 83 Pac. 563. The law imposes the duty upon the carrier of exercising the utmost care to protect his passengers against accidents; and, in case an accident occurs, the inference arises that the carrier has not exercised that high degree of care which the law imposes. If such care had been exercised,

the inference is that the accident would have been avoided; that is, if the degree of care which the law imposes had been exercised in the construction and maintenance of the track and in the selection and inspection of machinery, instrumentalities, and appliances of all kinds, and in handling them, by the servants, then it may be inferred that the accident would not have occurred. But this inference in its last analysis amounts simply to one way of proving or establishing negligence. It means, too, just what the maxim implies. "The thing speaks for itself." That is, an accident has happened—therefore it may be inferred that by the exercise of the degree of care required it could have been avoided. The only difference between an ordinary case of negligence arising between master and servant, or between those sustaining other relations, and one arising between a carrier and passenger, consists in the manner of establishing the negligence constituting the gist of the action. In the first instance referred to, the happening of the accident causing the injury ordinarily is no proof of negligence; while, as between carrier and passenger, when arising as above indicated, the happening of the accident may be, and usually is, *prima facie* proof of negligence. It must not be assumed, however, as it sometimes is, that the maxim of *res ipsa loquitur* is limited to cases arising between carrier and passenger. This is well illustrated by the New York Court of Appeals in the case of *Griffen v. Manice,* 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, in which case there is a learned and interesting discussion with regard to the application and legal effect of the maxim. Nor should it be assumed that the maxim is applicable under all circumstances as between carrier and passenger. There may be, and are, accidents which cause injuries to passengers where the maxim cannot be applied. The conditions under which the maxim does or does not apply are illustrated and applied in the following, among other, cases: *Herstine v. Lehigh Valley Ry. Co.,* 151 Pa. 244, 25 Atl. 104; *Graeff v. Phil. & Read. Ry. Co.,* 161 Pa. 230, 28 Atl. 1107, 23 L. R.

A. 606, 41 Am. St. Rep. 885; *Morris v. N. Y. C. & H. R. R. Ry.,* 106 N. Y. 678, 13 N. E. 455; *Griffen v. Manice,* 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; *Penn. R. Co. v. McKinney,* 124 Pa. 462, 17 Atl. 14, 2 L. R. A. 820, 10 Am. St. Rep. 601; *Goss v. N. P. Ry. Co.,* 48 Or. 439, 87 Pac. 149; *Paul v. Railroad,* 30 Utah 41, 83 Pac. 563; *Dearden v. San Pedro Ry. Co.,* 33 Utah 147, 93 Pac. 271; *Paul v. Salt Lake Ry. Co.,* 34 Utah 1, 95 Pac. 363.

Referring now to the evidence in this case, does it show any negligence on the part of appellant? As we have seen, there was no negligence in the management of the train. It stood still before the accident occurred, and remained so until after it had occurred. There is no evidence that any act of an employee in any way caused or contributed to the happening of the accident. There is no evidence of any defect in any appliance or instrumentality used by appellant, unless such defect may be inferred from the fact that a door closed while the passenger was in the act of alighting from the train after passing through the open door. But can it be inferred that there is some defect in an ordinary door simply because it swings upon its hinges, and closes unexpectedly? If we bear in mind that a door swings upon hinges, that it is intended to open and close for the use of passengers to enter and leave the car, how can any inference of negligence arise merely because a door closes at a time when it was not expected to do so by a particular person, and for some unexplained reason? Can it be said that because there is some evidence that car doors are usually provided with a catch to hold the door open while passengers are passing in or out of the car at stations, and that because this door was not held open, therefore the catch was defective? Before this inference can prevail, it seems to us it should be made to appear that the door was in fact placed back so as to come in contact with the catch, and that it was not held in place by it. If, under such circumstances, the catch did not hold, it might possibly be inferred that the catch

was defective. Can it be assumed that the appellant was negligent in not seeing that the door was placed back sufficiently to interlock with the catch? This, it seems, would be wholly unreasonable. Car doors, as a matter of common if not universal, knowledge, are not entirely under the control of the employees of the railroad company, but are used at pleasure by the passengers for the purpose of passing in and out of the car, or in passing from car to car. If, therefore, it be said that it is the duty of the railroad company to see that every car door is fastened back when it is opened, it must follow that the company must station a servant at every door to attend to the fastening of it in case the passing passenger either leaves it unlatched in closing it or unfastened to the back catch when opening it. To merely have a servant fasten the door, and then leave it, would be of little, if any, use, since any passenger might unfasten it the next moment. If the law does not impose the duty upon the railroad company to keep a constant watch upon the car doors, then no negligence is shown in this case. There is no evidence that the door was not fastened back at the proper time, unless the fact that it closed raises a presumption that it was not so fastened. If such a presumption arises at all, it cannot prevail as against the known fact that both ingoing and outgoing passengers interfere with car doors. There is evidence that there were other passengers on the car platform, but there is no evidence whatever to show that the door was not caused to be closed by some passenger or some one in the car or from some other natural cause. The movement of the train did not cause it to close because the train did not move. It is not shown that any act of the appellant or of any servant caused the door to close. Therefore the real cause is left to mere conjecture. When it is remembered that doors are made to swing upon their hinges for the purpose of opening and closing at any time, then the closing of a door is such a usual and natural occurrence that no negligence can be inferred from the simple fact that the oc-

currence took place. But, if an inference would arise that the back catch was defective because the door closed, this inference was entirely overcome by the positive testimony of the conductor, who testified that the catch provided to hold the door back when open was in perfect order and held the door in place when it was forced back into the catch. There is no evidence disputing this testimony. The rule, therefore, applies which is well and tersely stated in a similar case by the Supreme Court of Oregon in the syllabus of that case in the following language:

"Where the evidence of negligence is entirely inferential and the testimony for the defendant is clear and undisputed to the effect that there was no negligence, the plaintiff's case is overcome as a matter of law, and it becomes the duty of the judge to take the case from the jury." *Goss v. N. P. Ry. Co.*, supra.

Taking the whole evidence in this case, we are unable to see how respondent can sustain the judgment in the light of sound reason and correct principles. But the decisions need not be rested upon reason and principle alone. There is direct, and what we consider good, authority to sustain our conclusions.

In the case of *Skinner v. W. & W. Rd. Co.*, 128 N. C. 435, 39 S. E. 65, the facts were almost identical with those in this case. The only difference between that case and this is that there the train was moved, while in this case it stood still. The court in the course of the opinion at page 437 of 128 N. C., at page 65 of 39 S. E., disposes of the alleged negligence as follows:

"We cannot see the least negligence in the management of the defendant's train, and there was no testimony of any fault in the condition or construction of the coach door. The occasion was purely an accident. Nothing short of stationing a man at both doors in each coach at every stopping place to watch the doors to prevent an injury to passengers could prevent such accidents, and such requirement would be most unreasonable under present conditions."

A similar accident was before the court in the case of *Goss v. N. P. Ry. Co.*, 48 Or. 439, 87 Pac. 149, wherein the Supreme Court of Oregon held that the mere closing of a door does not come within the maxim of *res ipsa loquitur*, but it should be made to appear that there was some defect in the door or in the fastening, or that the door was closed by some other act of negligence on the part of the company. It is true that in that case it was also held that it constituted negligence upon the part of the passenger to place his fingers on the door frame against which the door naturally closed.

In the case of *Hardwick v. Ga. R. & B. Co.*, 85 Ga. 507, 11 S. E. 832, it was held that the closing of a car door by which a passenger's hand was injured under circumstances which raised a much stronger inference of negligence than is present in this case was a pure accident, and did not authorize a recovery.

No case has been cited where, under circumstances as disclosed by this record, a recovery was permitted, and we do not think such a case can be found. It is possible that in case of an adult passenger the fact of exposing himself to such an injury may be held to be negligence upon his part which would prevent a recovery. Some of the courts held it to be such as a matter of law. [3 Thomp. Comm. on Neg. section 2987.] But the cases, so far as we know, all hold that an injury caused by the mere closing of an ordinary car door, either while the train is in motion or while standing still, is a pure accident for which the carrier is not liable, unless the injury is caused by some defect in the door or its appendages, or is attributable to some act constituting negligence upon the part of the carrier. It seems to us that this is good law and good sense in view that the carrier is not an insurer as against an injury to passengers. If, in view of the evidence in this case, it should be held that respondent can recover, it would have to be based upon the theory that a common carrier of passengers assumes and insures against every risk and danger to which a passenger may be exposed, including the consequent injury aris-

ing therefrom.' Such is clearly not the law.        **3, 9**
While the carrier is required to exercise the utmost
degree of care to ` prevent accidents and injury to
his passengers, he nevertheless is not an insurer of
their safety. We remark, however, that, independent of the
fact that the injured passenger in this case was an infant,
we are not prepared to subscribe to the doctrine that under
all circumstances in case of an injury to a passenger by the
closing of a car door against his hand it should be held neg-
ligence as a matter of law for the passenger to place his hand
upon the door frame at the place where the closing of the door
would cause him injury. We prefer to rest our decision upon
the ground that the evidence in this case does not establish
culpable negligence under any rule of law by which negli-
gence is established, and hence there can be no recovery.
Upon the question of contributory negligence, therefore, we
express no opinion.

From what has been said it follows that the court erred
in refusing appellant's request to direct a verdict and in sub-
mitting the case to the jury, and in entering judgment for
respondent on the verdict. The cause is reversed, with direc-
tions to the trial court to grant a new trial, appellant to re-
cover costs.

STRAUP, C. J., and McCARTY, J., concur.