## MORRISSEY v. UNION PACIFIC RAILROAD CO.

No. 4361.   Decided Sept. 28, (249 P. 1064.)

*Miller, Matterson & Quinn,* of Syracuse N. Y., and *Stuart P. Dobbs,* of Ogden, for appellant.

*George H. Smith, John V. Lyle, Robert B. Porter,* and *Dana T. Smith, all of Salt Lake City,* and *C. R. Hollingsworth,* of Ogden, for respondent.

### CHERRY, J.

This action is to recover damages for the death of Samuel T. Bailey, and was brought by the plaintiff as adminis-

trator, etc. Deceased, at the time of his alleged injuries, was employed by the United States as a clerk in the railway mail service. It is alleged that on July 12, 1923, while engaged in his duty in a railway mail car, attached to and forming a part of a railway train moving between Green River, Wyo., and Ogden, Utah, operated by defendant, the deceased, in consequence of defendant's negligence, sustained an injury which later resulted in his death. The negligence alleged, in substance, is that the defendant operated the train at a high, dangerous, and reckless rate of speed, down grade, with defective equipment, over improper road and roadbed, and by the negligent and sudden application of the brakes, abruptly slackened the speed of the train, and thus produced an extraordinary, unusual, and violent lurch or jolt of the train, in consequence of which the deceased was thrown with great violence in and about the car in which he was riding, causing severe injuries to his head, from which a condition or disease developed, and from which he died about three months later. An issue of fact upon defendant's liability was made by the pleadings, and the case came on for trial before the court and a jury. At the close of the plaintiff's case, the court, on motion of defendant, ordered a nonsuit and dismissed the action. The plaintiff appeals.

The main question for decision is whether the plaintiff produced evidence sufficient to go to the jury upon (1) the defendant's negligence, and (2) the causal connection between the alleged injury and the death of deceased. The trial judge held against the plaintiff on both points.

The evidence was to the effect that on the 12th of July, 1923, the deceased and two other mail clerks, in the performance of their duties, were traveling in a railway mail car attached to and forming a part of passenger train No. 7, operated by the defendant company, which was on its way from Green River, Wyoming, to Ogden, Utah. The deceased and one clerk were standing up and

the other was seated in a chair at a table. The train was moving rapidly down grade through a mountainous country, over a track with numerous curves, when there occurred a lurch or jolt of the car. The evidence of the occurrence and its immediate consequences consisted of the testimony of the two mail clerks who were present in the car with the deceased at the time. The clerk who was seated in the chair at the time of the incident stated:

"It was something of a checking of the train. It would seem to me like the air had been put on and caused this slight lurch. It moved my chair four or five inches forward. I pulled my chair back and proceeded with my work. My back was toward the other clerks, and I did not see what happened to them. I heard a sound like a man kicking something and Bailey said, 'It was quite a wallop.' Bailey asked me to feel his head, but I was rushed for time and did not look up. The lurch of the train caused a slight commotion. It was more than the usual movement of the train."

The other clerk stated:

"On account of the lurch of the train I lost my balance and fell. I didn't see Bailey fall, but I saw him pick himself up. I didn't notice what position he had fallen in. He asked me if I would glance at his head, if I could see where he was hit. I didn't stop to take any particular time—I couldn't see anything. I went over and started to tie up more letters, and he continued to do the same. The lurch was unusual, although I can't say it was any more unusual than some of the other unusual jerks I have experienced. An abrupt slackening occurs about every trip. Except for emergency stops or the air hose breaking, abrupt stops are not frequent. The train was abruptly slackened. I infer that it was due to the application of the air brakes. That occurs quite frequently. We do not take a trip on train No. 7 or No. 9 when it does not occur. Such an abrupt slackening occurs about every trip."

There was some evidence that Bailey was in good health prior to the time, but other evidence showed that when starting on his trip two days previous he complained of not feeling right and said he intended to lay off unless he felt better when he returned to Ogden. After the occurrence com-

plained of, Bailey resumed his duties on the remainder of the trip to Ogden, and nothing more was said about it. Upon arrival at Ogden, the testimony was that he looked haggard, worn out, and fatigued. He did not return to work again. His wife testified that he returned home early in the afternoon of July 12, looking tired and without his usual vim or good spirits. He laid down and omitted his usual bath. He ate his usual dinner and retired early. Next morning he asked her to help him make out his trip report, which was unusual. He complained of his memory. In the afternoon she went with him to consult a doctor. No mention or complaint was made either to his wife or to the doctor of any accident or injury happening on the train. The doctor's examination, disclosed impaired vision, nasal obstruction, diseased tonsils, and nervous derangement, but no evidence of external injury. The patient complained to the doctor of loss of word memory, and said he had suffered a sunstroke on July 9th. Thereafter he was under constant observation and treatment, but gradually grew worse. His wife testified that he told her upon one occasion about two weeks after his first examination that he fell in the mail car on his trip in. This is the only evidence of any statement ever made by the deceased upon that subject. He died on November 1st. An autopsy or post mortem examination was at once performed which discovered a tumor called a gliosarcoma of the brain, which all the doctors agreed was the cause of death. The doctors, four in number, who had from time to time participated in the examination and treatment of the patient from the time of his alleged injury to the time of his death and who performed the autopsy, testified as witnesses for the plaintiff, and gave evidence to the general effect that deceased died from tumor of the brain, with nothing to indicate that the same was caused by injury, and that their examination discovered no evidence that the patient had sustained any external injury. Another doctor was produced as a witness for the plaintiff who testified that he had been present in court and heard all the evidence in the case, from

which, he stated, he believed the death of the deceased was due to his injury. There was no direct or specific proof of defendant's negligence in the equipment or operation of the train.

The contention of the plaintiff is that, the deceased being a passenger of defendant, and the means of his transportation being exclusively within defendant's control, a prima facie case of liability is made out by the evidence of the accident and the resulting injury; that from the transaction itself a presumption of negligence arises under the maxim "res ipsa loquitur" (the thing itself speaks). The meaning of the doctrine of res ipsa loquitur is thus expressed by Erle, J., in *Scott v. London Docks Co.*, 2 H. & C. 596:

"Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." 3 Bouv. Law Dict. 2908.

"This definition has met with such general approval at the hands of judges in subsequent cases that it has become, so to speak, a legal classic." 1 Thompson Com. on Neg. § 15.

The maxim, while not so limited, is most often applied in cases of injuries to passengers. It is not, however, applicable under all circumstances as between carrier and passenger. *Paul v. S. L. C. R. Co.*, 34 Utah, 1, 95 P. 363; *Christensen v. Oregon Short Line R. Co.*, 35 Utah, 137, 99 P. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159.

That the deceased was a passenger of defendant at the time of the alleged injury, and that the means of his transportation, involved in the alleged accident, were under the exclusive control and management of the defendant were satisfactorily proved. But that is not enough to warrant the application of the res ipsa loquitur rule. The nature of

the occurrence causing the injury must be such as in the ordinary course of things does not happen if those who have the management use proper care. See *Callis v. United Rys., etc., Elec. Co.*, 128 Md. 406, 97 A. 715; *Nelson v. Lehigh R. Co.* (Sup.) 50 N. Y. S. 63; *Valentine v. N. P. R. Co.*, 70 Wash. 95, 126 P. 99.

The inference of negligence arises, not from the fact of injury, but from the circumstances under which it occurred. See *Paul v. S. L. C. R. Co.*, supra; *Christensen v. Railroad*, supra; *Callis v. United R. & E. Co.*, supra; *Nelson v. Lehigh V. R. Co.*, 50 N. Y. S. 63; *Valentine v. N. P. R. Co.*, 70 Wash. 95, 126 P. 99.

With respect to the facts in this case, the most that can be said for the plaintiff's evidence is that when the train was moving rapidly down grade and around curves a jerk or lurch occurred of sufficient violence only to cause two mail clerks who were standing in the mail car to lose their balance and fall down, and caused the chair upon which another clerk was seated to move forward four or five inches. The occurrence was described respectively by the witnesses as a "slight lurch" which caused a "slight commotion," and as an "abrupt slackening" which occurs frequently. Some words spoken at the time indicated that the deceased might have bumped his head in the fall, but the injury, if any, was so slight, that no mention of it was thereafter made by the deceased to any person, and no evidence of it found by the physicians who examined and treated him directly after he is alleged to have sustained it. The jerk or lurch complained of caused no injury to the train or its equipment, and it is not shown that it was observed or felt by any persons other than the three mail clerks. So far as shown, the train proceeded without interruption and without any disturbance whatever except the momentary and slight commotion in the mail car. Immediately thereafter the mail clerks resumed their usual labors and made no further reference to the incident. That this

evidence is insufficient in law as a basis from which negligence can be inferred or presumed we entertain no doubt. The description of the jolt or lurch and its consequences, as detailed by the witnesses, not only fails to characterize it as unusual or extraordinary, but rather affirmatively shows it to have been a usual and customary incident of railroad transportation. It is common knowledge and experience that passengers on trains may be shaken and jostled by the ordinary lurches and jerks which are unavoidable in the operation of trains over grades and around curves. The risks of such disturbances are assumed by passengers. *Chesapeake & O. R. Co. v. Needham*, 244 F. 146, 156 C. C. A. 574, L. R. A. 1918A, 1169; *Delaney v. Buffalo R. & P. R. Co.*, 266 Pa. 122, 109 A. 605; *Norfolk & W. R. Co. v. Rhodes*, 109 Va. 176, 63 S. E. 445; *Farmer v. St. L., I. M. & S. R. Co.*, 178 Mo. App. 579, 161 S. W. 327; *Norfolk & W. R. Co. v. Birchett*, 252 F. 512, 164 C. C. A. 428, 5 A. L. R. 1028.

There being nothing in the nature or immediate consequences of the incident complained of to suggest fault or want of care on the part of the defendant; nothing to indicate that it could not well have happened in the ordinary course of things without the defendant being negligent, the doctrine of res ipsa loquitur is not applicable and the trial court correctly granted the nonsuit on that ground. Many cases upon the subject are collected in notes and annotations in 13 L. R. A. (N. S.) 601; 34 L. R. A. (N. S.) 225; L. R. A. (N. S.) 1916C, 364; 5 A. L. R. 1034. See, also, 10 C. J. 1023.

Upon the question of the casual connection between the alleged injury and the death of deceased, the evidence of plaintiff also lacked sufficiency. The evidence relied upon tending to show that the deceased sustained an injury to his head at all is weak and frail, and at best indicates a slight and trivial blow which left no mark and was quickly forgotten.

As before seen, the deceased died November 1, 1923, of a tumor of the brain. There was nothing in the evidence upon which to base the conclusion that the tumor was caused by external violence. Indeed, the testimony of the physicians who examined and treated the deceased quite satisfactorily established the contrary. Within two days following the supposed accident the deceased was examined by two physicians, neither of whom found any evidence of injury, and none was complained of by deceased. After his death, three months later, the post mortem examination, which definitely disclosed the cause of his death, furnished no hint or indication whatever that death was contributed to or caused by external injury. The failure of proof in this respect was alone sufficient to warrant the nonsuit.

The additional assignment of error predicated upon the sustaining of an objection to a hypothetical question propounded to one of plaintiff's medical experts, requires no particular consideration. The question clearly assumed facts not in evidence and omitted others which were proved. Besides, the witness, in answer to other questions gave his opinion on the matter inquired about. Even assuming a technical error in the ruling of the trial court, the matter was harmless and immaterial. The question, no matter how answered, could not have changed the ruling on the motion for nonsuit.

The judgment is affirmed, with costs.

THURMAN, FRICK, and STRAUP, JJ., concur.

GIDEON, C. J.

I concur in the holding that the proof fails to show that the injury caused by the negligence, if any, of the respondent, resulted in death, or that it in any way contributed to the cause of death.