# Staunton.

## ROANOKE RAILWAY AND ELECTRIC CO. V. STERRETT.

September 10, 1908.

Absent, Keith, P.

1. CARRIERS—*Injury to Passenger—Callapse of Bridge—Hidden Defects.* A street railway company is not liable for an injury inflicted on a passenger by reason of the collapse of one of its bridges where it appears that the bridge was made to order by a competent and reliable manufacturer, was frequently and properly inspected and that the collapse was the result of an imperfect weld in a cord which supported the bridge, and that the defect was one which the utmost scrutiny could not have detected. It is a case of unavoidable casualty which human care and foresight could not have provided against.

2. CARRIERS—*Injury to Passenger—Collapse of Bridge—Negligence—Proximate Cause.*—In an action by a passenger against a railroad company to recover for injury inflicted by the falling of a railroad bridge, it is not error to instruct the jury that "the slightest neglect against which human prudence and foresight might have guarded, and by reason of which the injury may have been occasioned render the company liable for damages for such an injury."

3. CARRIERS—*Injury to Passenger—Collapse of Bridge—Presumption—Burden of Proof.*—In an action by a passenger against a carrier for a negligent injury, when the plaintiff shows that he was a passenger, and that his injury resulted from an accident which was caused by the breaking down of one of the carrier's bridges it is sufficient proof of the defendant's negligence to put upon it the burden of establishing by a preponderance of evidence that the accident and resulting damage was occasioned by inevitable casualty, or by some cause which human care and foresight could not have prevented. The presumption of negligence does not arise from the mere fact of an accident to a passenger, but from the nature and quality of the accident—being such as does not ordinarily befall to a passenger when due care is exercised by the carrier.

Error to a judgment of the Circuit Court of Roanoke county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Robertson, Hall, Woods & Jackson,* and *Dupuy & Whittle,* for the plaintiff in error.

*N. H. Harrison & Son* and *Hoge & Penn,*. for the defendant in error.

HARRSION, J., delivered the opinion of the court.

This action was brought by Mary E. Sterrett against the Roanoke Railway and Electric Company to recover damages for injuries alleged to have been sustained by her, in consequence of the negligent failure of the defendant company to maintain one of its street railway bridges in a safe condition. The trial resulted in a verdict and judgment in favor of the plaintiff, the propriety of which is called in question by this writ of error.

In the view we take of the case, it will conduce to clearness and brevity to consider first the assignment of error which involves the action of the circuit court in refusing to set aside the verdict of the jury, upon the ground that it was contrary to the law and the evidence.

The record shows that one branch of the defendant's street car system ran from Roanoke city for a distance of some two and a half miles to the suburban town of Vinton. Before reaching the corporate limits of Vinton, this line crossed Tinker creek on an iron truss bridge, which was about seventy-five feet long, made into one span composed of six sections of twelve and one-half feet each. Upon each section of the span was placed wooden stringers, running the length of each section. These stringers were 12 x 10 inches in size, and were

supported at either end of the twelve and one-half foot section by resting about two or two and one-half inches on metal plates, called floor beams, about five inches in width. These wooden stringers were fastened together with straps, so as to hold them together and prevent lateral movement. Upon these stringers were placed the cross-ties, which were securely fastened, and to the ties were spiked the rails. The record further shows that this bridge is what is known as a pin-connected Pratt truss bridge; that the truss is supported by long iron cords, known as top and bottom cords, made of wrought iron. These cords come together at a point just under the track, and are connected by a pin or post, made of wrought iron, which pin runs through loops at the ends of these cords. It is shown that the entire weight of the bridge is held up by these cords, and the bridge so constructed that if the connecting pin is broken, or any one of the cords is broken, the bridge will collapse. It appears that the iron bridge in question was made to order for the defendant company by the Virginia Bridge and Iron Company, of Roanoke, Va., which is shown to have been, and still to be, a thoroughly reputable, competent and reliable manufacturer. It further appears that at the time of the accident the bridge had been continuously in use for six years, and was believed by the defendant railway company to be perfectly safe and suitable for the use to which it was put. It further appears that some eight or ten months prior to the accident, this bridge was thoroughly overhauled, new stringers were put in, and the entire structure examined and inspected. It is also shown that about two months prior to the accident new sixty-pound rails were substituted for old rails, and the entire bridge at that time again examined and inspected. It further appears that a competent inspector of bridges was kept in the employment of the defendant company, who examined this bridge every few weeks, and that no defect was discovered except those which were repaired in the manner already mentioned. The capacity of the bridge is shown to have been very much greater than was

actually necessary for the purposes and uses to which the bridge was put.

On the morning of the accident several cars, heavily loaded with passengers, had passed over the bridge safely, with nothing occurring to suggest or indicate any defect therein. Finally, the car involved in the accident under consideration, containing about eighty-five to ninety passengers, came upon the bridge on its way from Vinton to Roanoke. It had passed over about three-fourths of the bridge, when suddenly and without warning the structure collapsed, and the bridge, with the exception of a portion of its western section, fell into the stream. The car, with its passengers, was for a while held up by the rails, but these rails gradually bent until one of them broke, precipitating the rear end of the car into the stream. Mary E. Sterrett, the defendant in error, was a passenger on this car, and received the injuries of which she complains.

Totally different theories are advanced by the parties, respectively, as to the cause of this accident. The defendant in error contends that some of the stringers, the ends of which rested upon the floor beams, had slipped until the lap or catch was reduced from two or two and one-half inches to only one inch and a half, and that the defendant company had, or ought to have had, notice of this alleged defect. The contention of the defendant in error is, further, that the weight of the car upon these stringers caused them, at the time of the accident, to slip entirely off of the floor beams, thus leaving nothing to support the car.

The contention of the plaintiff in error is that one of the iron cords, which was found broken, had a defective weld just where the loop was made in the cord, and that the break was in this weld; that the defect in the weld was latent and could not be discovered by any external examination, and only appeared after the weld was broken; and that the hidden defect in the weld caused the cord to break and the bridge, which was supported by the cord, to collapse.

We are of opinion that the evidence fails to sustain the contention of the defendant in error, that the accident was caused by the stringers slipping off of the floor beams, and establishes the theory of the plaintiff in error, that the accident resulted from the defective weld which caused the cord supporting the entire structure to break, thereby effecting the inevitable collapse which followed.

The witnesses introduced by the defendant in error, for the purpose of showing that the bridge was not in a safe condition, were without knowledge or experience in the construction of bridges or in bridge engineering. They do not profess to know that the stringers were in an unsafe condition, or whether they had been built into the bridge as situated when seen by them. They do not say that the slipping of the stringers, which they supposed had taken place, caused or contributed to the accident. They merely state, without having made any measurement, that the stringers only rested upon the floor beams one and one-half inches; the statement that they had slipped being mere assumption. Further, these witnesses made their observations of the stringers, in most instances, some time before the accident, and locate most, if not all, of the stringers observed by them at a point other than the section of the bridge where the collapse occurred. This theory of the defendant in error, that the stringers had slipped and thereby caused the accident is, however, shown to be fallacious and without foundation by the testimony of competent experts, whose evidence is not in conflict with the plaintiff's witnesses who admit their inability to say whether the conditions they describe did, or did not, cause or contribute to the collapse of the bridge.

Two experts were introduced by the plaintiff in error—one a bridge builder and the other a bridge engineer—both competent, with long experience in their line and familiar with the character and construction of the bridge in question. They show that the conditions described by the plaintiff's witnesses, if true, could not have caused the accident, and did not in any

way contribute thereto. The undisputed testimony of these experts is that, if the stringers had slipped and fallen, it would not have caused the bridge to fall, for the reason that the stringers get their support, in part, from the bridge, while the latter gets no part of its support from the stringers.

These experts explain the mechanism of the bridge, and show, that while it is built in six sections of twelve and one-half feet each, yet these sections are all connected into one entire span which makes the whole bridge. The iron cords which unite these several sections and bind them into one span are what holds up the bridge, the stringers performing no function of that sort. If one of these cords breaks, the bridge falls. It is further shown that if one or more of the stringers had slipped from the beams and fallen into the creek, neither the bridge nor the car would have fallen from that cause.

These experts inspected the bridge after it had fallen, and found no unsound or broken timbers therein, and found no faulty condition of anything about the bridge, except the defect in the loop of the bottom cord where there had been an imperfect weld. The broken cord was produced in court, and the unqualified testimony of these experienced bridge men is that the breaking of that cord was the sole cause of the accident; and that the defect in the cord was the imperfect weld, which could not have been detected by the utmost scrutiny.

"Where an accident arises from a hidden and internal defect, which a careful and thorough examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is not liable for the injury, but the misfortune must be borne by the sufferer as one of that class of injuries for which the law can afford no redress in the form of a pecuniary compensation." Hutchinson on Carriers, vol. 2, secs. 903-4 (3rd ed.). The liability of a carrier of passengers as thus defined is now almost universally adopted.

As a matter of course, there can be no negligence where there is no breach of duty. It must appear, therefore, not only

that the defendant owed a duty, but also that he did not perform it; and if the accident complained of was inevitable, it is not a case of negligence. An accident is inevitable, if the person by whom it occurs neither has, nor is legally bound to have, sufficient power to avoid it, or prevent its injuring another. In such a case the essential element of a legal duty is wanting, and it cannot, therefore, be a case of negligence. Shearman & Red. on Neg., vol. 1, secs. 15, 16.

Applying these well settled principles to the established facts in the case before us, the conclusion cannot be escaped, that the accident under consideration was one of those inevitable and unavoidable causualties which human care and foresight could not have provided against, and that no liability attaches to the plaintiff in error on account thereof.

Notwithstanding the conclusion reached on the merits, the case must, under our practice, be remanded for another trial, if the plaintiff be so advised. It is, therefore, necessary that objections taken to two of the instructions given by the circuit court should be considered.

The first of these is instruction No. 4, given on behalf of the plaintiff, which is as follows: "The slightest neglect against which human prudence and foresight might have guarded, and by reason of which the injury may have been occasioned, renders the Roanoke Railway Company liable in damages for such injury."

The objection made to this instruction is that the jury are told that negligence that may have occasioned the plaintiff's injury will justify a recovery; it being insisted that the negligence must have caused the injury in order to justify a recovery.

This instruction, in the same language that is here employed, has been more than once approved by this court in cases of a like nature. *Balt. & O. R. Co.* v. *Wightman's Admr.*, 29 Gratt. 431, 26 Am. Rep. 384; *Balt. & O. R. Co.* v. *Noel's Admr.*, 32 Gratt. 394. In both of these cases the accident resulted to a passenger from the falling of a railroad bridge.

An examination of the records and the briefs filed in both cases shows that the same objection, and the same argument in support thereof, was there made to this instruction that is now made.

In the first case cited, Judge Staples, speaking for a unanimous court, in referring to this instruction in common with four others, says: "We do not deem it necessary to enter into any discussion of the propositions of law involved in these in-. structions. It is sufficient to say that they are fully sustained by the elementary writers and by the opinions of the most respectable courts in this country."

The case of *Noel's Admr., supra,* is to the same effect.

In the light of these authorities, the objection to the instruction under consideration was properly overruled.

The second objection taken by the plaintiff in error is to the modification made by the circuit court of its instruction No. 2. The instruction, as asked for, was as follows: "The jury are instructed that the plaintiff, in order to recover in this case, must establish the negligence of the defendant by evidence sufficient to satisfy reasonable and well-balanced minds. They are further instructed that the evidence must show more than a probability of a negligent act, and the plaintiff cannot recover if it is just as probable that the accident in which the plaintiff was injured resulted from one of two causes, for one of which the defendant is not responsible."

This instruction was modified by the court and made to read as follows: "The jury are instructed that the plaintiff, in order to recover in this case, must establish the negligence of the defendant by evidence sufficient to satisfy reasonable and well balanced minds, and the evidence must show more than a probability of a negligent act; but when the plaintiff has shown that she was injured by the breaking down of the bridge and overturning the car, then this is sufficient proof of negligence on the part of the defendant company to meet the requirements above stated; and then the burden of proof is on the company

to establish, by a preponderance of evidence, that it has been guilty of no negligence whatsoever which caused the accident, and the damage has been occasioned by inevitable casualty or by some cause which human care and foresight could not prevent."

There was no error in this action of the circuit court. Under the instruction, as asked for, the defendant company would merely have to raise a doubt as to the cause of the accident, and thereby shift to the plaintiff a greater burden than the law imposes in such cases. In the case of a passenger, when the plaintiff shows that his injury resulted from an accident which was caused by the breaking down of one of the carrier's bridges, it is sufficient proof of negligence on the part of the defendant company to put the burden upon it of establishing, by a preponderance of evidence, that the accident and the resulting damage was occasioned by inevitable casualty, or by some cause which human care and foresight could not have prevented. The presumption of negligence suggested does not arise from the abstract fact of an accident to a passenger, but arises from a consideration of the nature and quality of the accident; and it must appear that it was such an accident as does not, in the usual course of things, happen to passengers when due care is exercised on the part of the carrier. Thompson on Neg., vol. 3, sec. 3484; *Richmond Ry. & Elec. Co.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736.

Because of the error of the circuit court in not setting aside the verdict as contrary to the law and the evidence, its judgment must be reversed, the verdict set aside, and the case remanded for a new trial, not in conflict with the views expressed in this opinion.

*Reversed.*