## GRAND v. ST. LOUIS & SAN FRANCISCO RY. CO.

No. 14660—Opinion Filed Jan. 29, 1924.

**1. Master and Servant—Defective Appliances—Proof of Negligence.**

To hold the master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of an injury. There must be some substantive proof of negligence, knowledge of the defect, or some omission of duty in regard to it must be shown.

**2. Same—Action by Section Hand Against Railroad—Failure of Proof.**

The evidence in this case carefully examined, and held, that it does not disclose actionable negligence on the part of the defendant, and that the court did not err in instructing a verdict for the defendant.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Choctaw County; George T. Arnett, Judge.

Action by Willie Lee Grand against the St. Louis-San Francisco Railway Company. Judgment for defendant. Plaintiff brings error. Affirmed.

R. H. Stanley, for plaintiff in error.

W. F. Evans, Ben Franklin, and Stuart, Sharp & Cruce, for defendant in error.

Opinion by PINKHAM, C. This is an action brought by plaintiff in error against the defendant in error to recover damages for personal injuries due to the alleged negligence of defendant in error.

The parties will be referred to as they appeared in the trial court.

The negligence alleged in the petition is that the plaintiff was an employe of the defendant, working as a section hand and that while working he was using a jack, which was being furnished by said defendant, in raising and lifting one side of the defendant's railway track, which was done by the aid of said jack and a bar; that by reason of the defective and worn and broken or bent condition of the said jack the plaintiff was injured in the following manner: that he had lifted the track a few inches and was in the act of lifting the said bar used for said purpose to catch another notch in said jack in order to lift the track to a greater height, when said jack tripped and jerked the said bar out of plaintiff's hands and threw the said bar downward with great force, and said bar so descending struck the plaintiff on the instep of his right foot, giving to the said plaintiff severe and grievous injury, thereby and then severely bruising said foot and breaking the bones and giving to the plaintiff permanent injury.

Plaintiff further states that at the time of his injury he was in the exercise of due care and diligence, working at his place of duty, and was injured by reason of defects in the aforesaid jack, which was one of the appliances used by said plaintiff in the business of said defendant, and that defects in said jack had not been remedied by reason of the negligence of the said defendant, and that the failure of said defendant to furnish to this plaintiff reasonably safe tools with which to work was the cause of said injury.

Defendant's answer, in addition to a general denial, for further and separate defense averred that if the plaintiff was injured at the time and place alleged in plaintiff's petition, which is not admitted, that his said injuries were due to his own negligence and carelessness and not to any negligence and carelessness upon the part of the defendant.

For reply the plaintiff denied each and every material allegation contained in defendant's answer

The case was tried before the court and jury and at the conclusion of all the evidence the defendant moved the court to direct a verdict for the defendant, which motion was sustained, to which action of the court the plaintiff then and there excepted. Whereupon the court directed the jury to return a verdict for the defendant, to which action of the court the plaintiff then and there excepted.

Judgment was rendered by the court upon the verdict of the jury. Motion for new trial was filed and overruled, to which action of the court the plaintiff at the time excepted, and gave notice of his intention to appeal to this court.

For a reversal of the judgment plaintiff in error assigns a number of specifications of error. The only error complained of in plaintiff's brief is the action on the part of the court in directing the jury to return a verdict for the defendant.

The argument made in plaintiff's brief in support of the contention that the judgment of the trial court should be reversed is to the effect that there was sufficient testimony introduced at the trial of said cause to require the trial court to submit the said case to the jury.

Counsel for plaintiff states in his brief that the plaintiff in error was not able at the trial of said case to prove that the catches of the jack were bent, but did prove the other allegations of his petition; that the jack was stiff; that it was not working properly; had heretofore been thrown aside as out of order and was a dangerous appliance.

The plaintiff testified that at the time he was hurt he didn't know the jack was in bad order, but after he was hurt he learned it was in bad order, and that he learned that "by other people."

In testifying as to what causes a jack to trip plaintiff stated "that catch is bent sometimes and won't catch"; that he guessed it was but had never examined the jack, and finally that he "did not know."

A witness for the plaintiff testified that he was present when the plaintiff got hurt; that he was off from the plaintiff a piece and when he turned around plaintiff stated that " the bar hit him—tripped and the bar hit him." This witness testified that they used the jack every once in a while; that they had it with them all the time and that it worked a little bit stiff; that the jack looked new; that whenever they used a jack they just picked up the jacks and used them; that this particular jack had been in service about a month or two.

Another witness for the plaintiff testified that he was the man that got this jack and brought it out himself; that what he knew about this jack was that he got it out and ran this jack and never knew anything wrong about it; that he had never seen anything the matter with the jack; that it belonged to him and that he worked with it all the time.

The section foreman testified on behalf of the defendant to the effect that this jack was in good condition; that it was not stiff any more than anything new and not worn would be, and the fact that a jack is stiff does not cause it to trip; that a stiff jack catches more readily than a loose one and that an old jack is more liable to slip; that he couldn't say how many times this jack had been used but he knew it had been used quite a number of times; that he first got the jack in question along the first part of April, and that it came out of the supply car as a new jack at the time he first got it.

Another witness on behalf of the defendant testified as follows:

"Q. Did you examine his—examine the jack after he got hurt with it? A. Well, after he had got hurt, well, I went over there then and pulled the jack myself, myself and another man helped me, and when I made a few pulls on it, well, it tripped the second time, and I taken the jack out and pulled the dog back and there was some cinders in behind the dog and I turned it up and pulled them out. Q. Did you use the jack again after you took the cinders out? A. Yes, sir. Q. Did the jack trip then? A. No, sir."

This witness further testified that dirt or cinders getting under the dogs of a jack causes it to trip and that "lots of times when you are not using a jack you have it laying around, sometimes it gets gravels, cinders, dirt—something like that, in it."

Witness further testified that if there was any bad defect about the jack at all he did not know it but that he knew there were some cinders after the plaintiff got hurt that could have caused it to trip.

Another witness on behalf of the defendant testified that "some gravel, some cinders, something, was behind—he turned it bottom side up and got some gravel out of it."

The evidence clearly establishes the following facts: That the plaintiff, while at work with the jack furnished by the defendant, received the injury complained of by the falling of the bar used in operating the jack across his foot, which resulted in preventing the plaintiff from bearing his weight upon the injured foot for some four weeks; that the jack in question was practically new and a little stiff.

There is nothing in the evidence to show that the stiff condition of the jack should in any degree cause it to trip. There is evidence to the effect that a jack that works a little stiff is not so likely to trip as one that is a little loose. The evidence shows that these jacks were taken out on the road and when not in use were allowed to lie around on the ground in the vicinity of the work, and that at times cinders, gravel, or dirt would get in behind the dogs and this sometimes would cause them to trip. There is evidence to the effect that some cinders or gravel were behind the dogs in the jack in question at the time of the accident, but there is no evidence to show how long these cinders had been there and there is no evidence to show or that tends to show, in any respect, that the defendant company or any of its employes knew of the existence of the cinders in the jack.

Before plaintiff could recover it was necessary for him to have established, first, that the jack which he used was defective; and second, that the defect was either known to the defendant or would have been discovered by the exercise of reasonable diligence on its part. Palmer v. Wichita Falls & N. W. R. Co., 60 Okla. 205, 159 Pac. 1115; Smith v. Acme Milling Co., 34 Okla. 439, 126 Pac. 190; Wyman v. Chicago, R. I. & P. R. Co., 76 Okla. 172, 134 Pac. 768; Looney v. Metropolitan Co., 200 U. S. 486.

Assuming the fact that cinders or gravel had accumulated in the jack in question the effect of which caused the same to trip, this was not sufficient to show that there was a discoverable defect which ought to have been ascertained by the defendant before the accident; on the contrary, the evidence was that the jack had been used continuously as needed without any abnormal action and so far as discoverable it was in proper condition of repair and construction.

There is no evidence disclosed by the record to show that the dirt, cinders, or gravel had not accumulated behind the dogs in the jack immediately prior to the time it was used, and there is nothing in the record to show that the defendant company or its employes had any knowledge of its condition or could have gained such knowledge by the exercise of reasonable care and diligence.

"Undisputed proof of freedom of the machine from all discoverable defects either in construction or repair, effectually overcomes any inference or presumption arising from the happening of the accident so as to leave no question in that regard for the jury." Verbrich v. Gouder & P. Mfg. Co., 96 Wis. 277, 71 N. W. 434.

"The proposition that an inspection of appliances would have discovered the defect is an affirmative one to be shown by the evidence, and the burden of proving it rests upon him who asserts it." Wyman v. Chicago, R. I. & P. R. Co., supra; Midland Valley R. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088.

"The general rule that a master owes to his servant the duty to keep a machine or appliance used by the latter in order and that he cannot delegate the duty so as to escape responsibility, does not apply to defects, arising in its daily use, which are not of a permanent character and do not require the help of skilled mechanics to repair, but which may easily be and are usually remedied by the workmen, and to repair which proper and suitable materials are supplied." Oklahoma Portland Cement Co. v. Shepherd, 47 Okla. 258, 147 Pac. 1031.

It cannot be said in the light of the evidence disclosed in this record that the defendant company was negligent in not discovering and removing gravel or cinders from the dogs in the jack in question, allowed to accumulate therein while the section hands were working with said jack along the section.

One of the cases cited in the brief of plaintiff is Chicago, R. I. & P. R. Co. v. Brazzell, 40 Okla. 460, 138 Pac. 794. In that case it appears the railway company had furnished to the employe a defective appliance, to wit, a spring, to be driven into the sleeve of the drawbar of a freight car, with an attachment which was too long; that on account of the attachment being too long, the spring could not be driven into the sleeve. This the employe did not know, but the employer did know or should have known by the exercise of reasonable care and diligence. That when the spring was sought to be driven into the sleeve on account of its defective condition it would bounce back, and as a result the chisel used in driving same into the sleeve flew up and struck the servant on the head, causing the injury.

An examination of this case and of other cases of similar character cited by plaintiff in his brief shows that they are clearly distinguishable from the instant case, and the principles of law applicable to the facts in the cases cited are not, we think, applicable to the facts in the case at bar.

There being no evidence in this record of any facts or circumstances from which the negligence of the defendant would be necessarily implied, if the court had submitted the case to the jury a verdict could have been returned for the plaintiff only upon conjecture. Palmer v. Wichita Falls & N. W. R. Co., 60 Okla. 205, 159 Pac. 1115.

We have carefully examined the evidence in this case, and conclude that it does not disclose actionable negligence, and that the trial court did not err in instructing a verdict for the defendant.

We think the judgment should be affirmed.

By the Court: It is so ordered.