**BALTIMORE & O. R. CO.**
**v.**
**O'NEILL.**
**No. 11770.**

United States Court of Appeals
Sixth Circuit.
March 2, 1954.

McAllister, Circuit Judge, dissented in part.

Arvin J. Alexander, Columbus, Ohio, Robert F. Ebinger, Columbus, Ohio, on brief; Alexander, Ebinger & Wenger, Columbus, Ohio, of counsel, for appellant.

Alex S. Dombey, Columbus, Ohio, C. Richard Grieser, Columbus, Ohio, on brief; Herbert & Dombey, Columbus, Ohio, of counsel, for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellee, Francis O'Neill, recovered a judgment in the district court against the appellant, Baltimore and Ohio Railroad Company, in the amount of $22,000 under the provisions of the Federal Employers' Liability Act, Sections 51–60, Title 45, U.S.C.A., for damages suffered in an accident on June 22, 1948, while working for the appellant as a boilermaker in its locomotive maintenance and repair shop at Newark, Ohio. The jury returned a verdict for the appellee in the amount of $32,000, but the trial judge ruled that he would sustain appellant's motion for a new trial unless the appellee filed his remittitur of all damages exceeding $22,000, which the appellee did. The motion for a new trial was then overruled.

On the day of the accident, appellee was installing a heavy, steel ash pan under one of appellant's steam locomotives. He was being assisted by another employee by the name of Janes. They brought the ash pan to the side of the locomotive which was sitting over a work pit. Appellee burned two holes through each side of the ash pan large enough for a half-inch bolt to go through, in order to bolt a chain across the pan which could be used for the purpose of lifting the ash pan by means of a hook and a pull jack. Appellee obtained the half-inch bolts, together with washers and nuts, from the toolroom where appellant kept such supplies. The ash pan was placed in the pit through the use of a crane. The pull jack was placed in the fire box of the engine directly above the ash pan and after the hook was connected with the chain appellee went into the pit. The helper remained in the fire box. The

pull jack was manually operated by working a handle up and down. While the ash pan was being raised to place it in its position underneath the engine, appellee was standing in the pit steadying it so it woudn't tilt either way and to help guide it into position. Before it reached its position one of the bolts broke and the right side of the ash pan fell against the appellee wedging him between the ash pan and the frame work of the locomotive, causing the injuries complained of.

The complaint as amended contains the following allegation: "During the repair operation hereinbefore described, defendant corporation negligently caused and permitted the metal bolt holding one side of the ash pan to the chain hoist to break, and the steel ash pan weighing approximately 150 to 200 pounds to drop down and swing to the rear and strike plaintiff in the face and on the body, thereby injuring the plaintiff." The appellee was the only witness who testified for him about the accident. His helper Janes did not testify. Appellee in his testimony described the situation somewhat more in detail than hereinabove stated, including various measurements of the pit, the pan, and distances, but with respect to the immediate cause of the accident gave only brief testimony as follows:

"Q. Now, did you get it in that position? A. No, sir.

"Q. What happened? A. The bolt broke and down came the pan.

"Q. What happened to you? A. I was wedged between the ash pan and the frame of the locomotive."

He also stated that the time he could not see his helper Janes in the fire box. On cross-examination, he testified as follows:

"Q. Now going back to June 22, 1948, the day of this occurrence, you had a helper working with you by the name of Janes, didn't you? A. Yes, sir.

"Q. Your job was to attach an ash pan to a locomotive, isn't that right? A. Yes, sir.

"Q. And, you were in charge of that work, were you not? A. Yes, sir.

"Q. You cut the two holes in the ash pan with a torch, didn't you? A. Yes, sir.

"Q. You went to the store-room and selected two new one-half inch bolts, a half-inch in diameter, for this work, did you not? A. Yes, sir.

"Q. When you went into the tool-room you could have selected any size bolt for this job, could you not? A. Yes, sir.

"Q. Now, after you got the bolts you went back to your work and you bolted the chain to the pan, didn't you? A. Yes, sir.

"Q. And you put the chain in the middle of the pan so that pan would balance when it was being hoisted, didn't you? A. I didn't make no measurements on it, whether I had it directly in the middle or center. I roughly got it to the center as closely as I could, without measurement.

\* \* \* \* \* \*

"Q. Now after this pan was pulled up into position, Mr. O'Neill, and you had hold of it with your hands, you were trying to juggle it around to make the holes fit, isn't that right? A. Yes, sir."

On re-direct examination, appellee stated that he used the same kind and size of bolts that he had used on similar jobs in the past, and testified as follows to questions asked by the Court:

"The Court: How do you know the bolt broke?

"The Witness: Mr. Connelly, the master mechanic, had me up in his office and showed it to me.

"The Court: Did you do this job in the usual way that you have done this job for years?

"The Witness: Yes, sir.

"The Court: And that others do it?

"The Witness: Yes, sir."

At the close of the appellee's case, the appellant moved for a directed verdict. It contended then, as it does now, that the appellee failed to adduce any proof of appellant's negligence proximately causing appellee's injuries. The District Judge overruled the motion, and after also overruling a similar motion at the close of all the evidence, submitted the case to the jury under the theory of res ipsa loquitur.

■■■ Appellee's cause of action is based upon the allegation in the amended complaint that the appellant negligently caused and permitted the metal bolt holding one side of the ash pan to the chain hoist to break. There was no direct evidence of negligence on the part of the appellant. Appellee's testimony was "the bolt broke and down came the pan." There was no evidence as to what caused the bolt to break. There was no evidence that the bolt was defective, although we think the evidence reasonably supports the inference that the bolt broke because it was defective. Under such circumstances, the rule of res ipsa loquitur applies, namely that when the thing which produced the injury sued for is shown to have been under defendant's exclusive control and management and the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened, an inference of negligence arises which, if not satisfactorily explained, is sufficient to take the case to the jury on the question of negligence. Southern Railway-Carolina Division v. Bennett, 233 U.S. 80, 86, 34 S.Ct. 566, 58 L.Ed. 860; Jesionowski, Adm'x v. Boston & Maine R. R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416. But, as stated in Sweeney v. Erving, 228 U.S. 233, 33 S. Ct. 416, 57 L.Ed. 815, where the rule is well analyzed, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference, that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient, and that other evidence may explain or completely rebut the inference.

■■■ Under the rule the burden of proof does not shift from the plaintiff to the defendant, and if the plaintiff offers no evidence pertaining to the issue of negligence other than the facts of the occurrence of the injury, and the explanatory facts are sufficient to rebut the inference, the plaintiff fails to meet the burden and fails to make a case. Sweeney v. Erving, supra, 228 U.S. at page 241, 33 S.Ct. at page 418. Where the explanatory evidence is contradictory or of such a character as to justify different inferences as to defendant's exercise of due care, it is for the jury to determine whether the inference of negligence has been rebutted by the explanatory evidence. But where the possible inference of negligence is clearly overcome by undisputed evidence free from any reasonable adverse inference, or where the uncontradicted explanatory facts establish non-liability as a matter of law, it is the duty of the court to direct a verdict for the defendant. The application of the rule does not change the general rule that where the evidence as a whole is insufficient to support a verdict for the plaintiff, defendant's motion for a directed verdict should be sustained.

■■■ In the present case, the facts on this issue are undisputed. Appellee's own testimony developed the fact that the bolt was a new bolt selected by him from regular stock, thus eliminating any possible question of the credibility of an adverse witness. The case is thus materially different from the cases, some of which are relied upon by appellee, where equipment in use has become defective through excessive use or lack of proper inspection and repair. The bolt was not

manufactured by the appellant; it was purchased by appellant in the usual course of business without notice of any defect. The broken bolt was not called for by appellee and was not introduced in evidence. There was no evidence of any kind in what way it was defective, or that it was not a hidden defect, or that the appellant knew or should have known that it was defective. As a matter of law, such a purchaser from a manufacturer is not chargeable with negligence if, after passing it on to others in the usual course of business, it proves defective. Clement v. Rommeck, 149 Mich. 595, 113 N.W. 286, 13 L.R.A.,N.S., 382; Peaslee-Gaulbert Co. v. McMath's Adm'r, 148 Ky. 265, 274–276, 146 S.W. 770, 39 L.R.A.,N.S., 465; Noble v. Sears Roebuck & Co., D.C.W.D.Wash., 12 F.Supp. 181. See Schindley v. Allen-Sherman-Hoff Co., 6 Cir., 157 F.2d 102. As pointed out in the following cases, any initial inference of negligence is entirely rebutted by such explanatory evidence with the result that the plaintiff as a matter of law failed to make out a case to go to the jury. Shankweiler v. Baltimore & O. R. Co., 6 Cir., 148 F. 195; Dierks Lumber & Coal Co. v. Brown, 8 Cir., 19 F.2d 732; Gray v. Baltimore & O. R. Co., 7 Cir., 24 F.2d 671, 673–674, 59 A.L.R. 461; Asprodites v. Standard Fruit & Steamship Co., 5 Cir., 108 F.2d 728; Black Mountain Corp. v. Partin's Adm'r, 243 Ky. 791, 796–800, 49 S.W.2d 1014; Dunning's Adm'r v. Kentucky Utilities Co., 270 Ky. 44, 109 S.W.2d 6; Roanoke R. & Electric Co. v. Sterrett, 108 Va. 533, 62 S.E. 385, 19 L.R.A.,N.S., 316; Christensen v. Oregon Short Line R. Co., 35 Utah 137, 99 P. 676, 20 L.R.A.,N.S., 255.

As pointed out by this Court in Southern Ry. Co. v. Derr, 6 Cir., 240 F. 73, the appellee may be able on the second trial of this case to introduce additional proof which would authorize the submission of the case to the jury, but on the extremely limited evidence now before us, the District Judge, in accordance with the ruling in that case and the ruling in Shankweiler v. Baltimore & O. R. Co., 6 Cir., supra, should have sustained appellant's motion for a directed verdict. See also Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547; Pennsylvania R. Co. v. Brubaker, 6 Cir., 31 F.2d 939; Grand v. St. Louis-San Francisco Ry. Co., 97 Okl. 111, 221 P. 80; Asprodites v. Standard Fruit & Steamship Co., 5 Cir., 108 F.2d 728, supra; Lynch v. New York, N. H. & H. R. Co., 294 Mass. 152, 200 N.E. 877; O'Mara v. Pennsylvania R. Co., 6 Cir., 95 F.2d 762.

For the purposes of the retrial, we will refer to some other questions that are presented by the appeal and which will be involved in the retrial.

We agree with the ruling of the District Judge that appellee was not guilty of contributory negligence as a matter of law in performing his duties in an apparent violation of Safety Rule No. 86 of the appellant, which prohibited an employee from standing under a load being hoisted or moved by a mechanical device. We do not construe the rule as applying to an employee whose duties required him to be under such a load in order to properly perform the hoisting job. The evidence showed this to be the case.

Dr. Pickett, a medical witness for the appellant, received from Dr. Erhard and Dr. Piatt, who made X-ray films of the injury at Dr. Pickett's request, their separate written reports, which contained their conclusions about what the films showed. On cross-examination of Dr. Pickett the trial judge, over appellant's objections, permitted these reports to be read to the jury. We are of the opinion that these reports were not admissible in evidence as substantive testimony concerning the injury. They were not sworn to and the conclusions expressed by the two doctors were not subject to cross-examination. Although there is some conflict in the authorities, we are also of the opinion that they were not admissible as entries of acts or occurrences made in the regular course of business under § 1732, Title 28, U.S. Code. New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297; Id.,

81 U.S.App.D.C. 331, 158 F.2d 328; Masterson v. Pennsylvania R. Co., 3 Cir., 182 F.2d 793; England v. United States, 5 Cir., 174 F.2d 466; Gencarella v. Fyfe, 1 Cir., 171 F.2d 419. See Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L. Ed. 645; Chapman v. United States, 5 Cir., 194 F.2d 974, 978; Clainos v. United States, 82 U.S.App.D.C. 278, 163 F. 2d 593. Contra: Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, certiorari denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652; Landon v. United States, 2 Cir., 197 F.2d 128. Appellee contends that irrespective of the statutory provision the report was admissible on cross-examination of Dr. Pickett to show the data on which Dr. Pickett's opinion was based, and that Dr. Pickett's opinion was not in accord with such data. Where a foundation is properly laid such evidence is admissible on cross-examination for the purpose of discrediting the witness, but the use of such evidence should be strictly limited and the jury carefully instructed about its limited use. The trial judge properly limited the use of this evidence at the time when it was offered and received, but we agree with appellant's contention that the effect of the admonition was nullified by the discussion of this evidence by the Court in its later charge to the jury. Such a conflict can of course be avoided at the next trial.

We see no merit in appellant's contentions that certain allegations should have been stricken from the amended complaint, because they were not supported by the evidence and that the appellee should not have been permitted to amend his complaint to conform to the proof. Rule 15, Rules of Civil Procedure, 28 U.S.C.

It is unnecessary to rule on the propriety of certain portions of the argument to the jury by counsel for appellee, and on the contention that the verdict was excessive by reason of passion and prejudice. Such matters are individual to a particular trial, and may or may not be present in the next trial. Appellant's objection to the right of the trial judge to order a remittitur instead of a new trial falls into the same category. Minneapolis, St. Paul & S. Ste. Marie Ry. Co. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243; Southern Pacific Co. v. Guthrie, 9 Cir., 180 F.2d 295, 304; United States v. Certain Parcels of Lands, etc., 5 Cir., 149 F.2d 81, 83.

Appellant makes numerous objections to the Court's charge to the jury. Most of them, at least, are, considering the charge as a whole, without substantial merit. In other instances, where it is claimed that the required degree of conciseness and clarity is lacking, a consideration of the objections by the trial judge will enable him at the next trial to eliminate such criticism without difficulty.

The judgment is reversed and the case remanded to the District Court for a new trial.

McALLISTER, Circuit Judge (dissenting in part).

I am of the view that the trial court properly submitted this case to the jury under the doctrine of *res ipsa loquitur*. When the thing which produces the injury is shown to have been under defendant's control and management, and the occurrence is such as does not happen in the ordinary course of events if due care is exercised, the fact of the happening of the injury itself affords sufficient evidence to support recovery, in the absence of an explanation by defendant tending to show that the injury was not due to defendant's want of care. Exclusive control is not a *sine qua non* for the application of the doctrine; legal control, responsibility for the proper and efficient functioning of the device which caused the injury, and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury are sufficient. Pitcairn v. Perry, 8 Cir., 122 F.2d 881.

In this case, the accident was caused by a bolt which broke while holding the heavy ash pan, and resulted in its falling upon the railroad employee. The facts of the accident warrant the inference of

negligence. The foregoing inference might be explained away by evidence on the part of defendant that it was not guilty of negligence.

Here, the injured employee, before working on the ash pan, had secured a new bolt from the railroad's toolroom. The fact that this was a new bolt which had never been in use does not, in my opinion, exonerate the railroad from negligence, or, in the language of the rule, explain away the inference of negligence. There was a duty on the part of the railroad, in purchasing such bolts, to inspect them in order to ascertain that they were not defective, for they were used in work where defective bolts might imperil the lives and safety of the employees of the railroad. Such a duty was, of course, implicitly admitted by the railroad, inasmuch as it introduced evidence of its practice in purchasing bolts; and this practice was to inspect the bolts at the plant of the company from which they were purchased, or at the time they were delivered to the railroad company. One of the railroad company's witnesses testified that a certain bolt had been sent for test purposes to the engineer of physical tests of the railroad company three and a half months after the accident, by the claims department of the railroad. Moreover, while a chemical test was made of the bolt in evidence—and it appeared that the chemical analysis was of the utmost importance in determining whether a bolt had sufficient tensile strength—there was no testimony by anyone making such a test; and there was no evidence that the bolt which was sent to the engineering department for physical and chemical tests was ever inspected before it broke, or even that it was the same bolt which caused the accident.

The railroad is not a guarantor of the instrumentalities and attachments of its equipment. If inspections, suitably and properly made, would not reveal a defect, and if it did not exist at the time that an accident occurred, the railroad must be held to have used due care. "But the mere fact that it had suitable inspectors, and that its inspectors inspected, does not carry with it, of necessity, the conclusion that [it] was properly inspected;" and it is for the jury to say whether or not, upon all the testimony, the presumption that the bolt was defective at the time of the accident had been removed by testimony showing the kind and extent and time of inspection. See Erie Railroad Co. v. Schomer, 6 Cir., 171 F. 798. "In short, it is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption, because it is for the jury to pass upon the credibility of the witnesses and the truth of the testimony". Southern Railway Co. v. Hussey, 8 Cir., 42 F.2d 70, 73, 74 A.L.R. 1172.

The rule of res ipsa loquitur creates an inference of fact. It casts on the opposite party the duty of going forward with evidence or risking that the jury will infer negligence from the occurrence. It will take the case to the jury unless the entire evidence is such that the presumption cannot stand against it. It is not enough that the evidence of the defendant would, if true, be sufficient to rebut the presumption, because it is for the jury to pass upon the credibility of the witnesses and the truth of the testimony. To justify a directed verdict, the evidence must be so conclusive that the minds of reasonable men could not differ as to the conclusions to be drawn therefrom. Atchison, Topeka & Santa Fe Ry. Co. v. Simmons, 10 Cir., 153 F. 2d 206.

There was no proof that the bolt which broke was ever inspected before the accident. There was no proof that the bolt which was subjected to physical and chemical tests was the broken bolt that caused the accident. The happening of the accident, under the circumstances disclosed in this case, called for application of the doctrine of res ipsa loquitur and justified the drawing of an inference of negligence on the part of the railroad company. It cast upon the railroad the duty of going forward with the evidence, or risking that the jury would infer negligence from the occurrence. It required

a submission to the jury, since the mere fact that the bolt was new and unused was not such evidence that the inference of negligence could not stand against it. Even though witnesses might have testified as to inspecting the bolt before the accident, it would still be for the jury to pass upon their credibility and the truth of the testimony.

For the foregoing reasons, I am of the opinion that the question of appellant's negligence should be submitted to the jury. On the other aspects of the case, I concur with the opinion of Judge Miller.